Michael T. WILLIS, Francie Willis, Willis Hite Enterprises, Inc., and Urban Retreat of Houston, Inc., Appellants,

v.

Dan DONNELLY, Appellee and Cross–Appellant,

v.

Michael T. Willis, Cross–Appellee.

No. 14–00–00569–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 19, 2003.

Supplemental Opinion on Denial of Rehearing Oct. 30, 2003.

---

11. This finding was reflected in the trial court's conclusions of law numbered 6–8.

18

Billy Shepherd, Houston, for appellants.

Jeff Nobles, Michael H. Norman, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

This is a double appeal involving shareholders' ownership of two closely held corporations, breach of fiduciary duty, breach of contract, and attorney's fees.

In the first appeal, consisting of 37 issues (some overlapping and some containing numerous subparts), Michael T. Willis, Francie Willis, Urban Retreat of Houston, Inc., and Willis Hite Enterprises, Inc. seek reversal of a judgment awarding Dan Donnelly $1.7 million for breach of contract, $1.7 million for breach of fiduciary duty, and a constructive trust on Urban Retreat stock and realty. First, we reverse and remand the breach of contract claim as more specifically delineated in this opinion because the trial court submitted an improper measure of damages. Because liability was contested, we may not reverse solely for a new trial on damages. Second, we affirm the judgment for breach of fiduciary duty. However, because the constructive trust partially provides a double recovery for breach of fiduciary duty and partially secures damages for breach of contract, which we are reversing and remanding, we remand for an election of remedies pertaining to breach of fiduciary duty and reverse that portion of the constructive trust relating to breach of contract.

In the second appeal, Dan Donnelly contends that the trial court erroneously awarded $400,000 in attorney's fees in connection with his $26,982.58 default on a loan made to him by Mike Willis. We reverse and remand for a determination of properly segregated and reasonable attorney's fees incurred in prosecuting the defaulted loan.

## BACKGROUND

### A. Urban Retreat

Urban Retreat, a Houston day spa, had its genesis in 1989 through the planning of its visionary, Mike Willis, a Houston businessman. He and a hired consultant, Richard Hite, located a site for the spa adjacent to an exclusive neighborhood, negotiated a lease for the property, and obtained a loan to renovate the facility. Willis also formed two corporations, Urban Retreat of Houston, Inc. (the day spa, hereinafter "URB") and Willis Hite Enterprises, Inc. (envisioned as a management business for a chain of spas, hereinafter "WHE").[1]

Having created the shell of Urban Retreat, Willis needed only to find staff and clientele. To this end, Hite approached Dan Donnelly, a popular hairstylist and president of an established local salon. Willis and Hite suggested that Donnelly could transfer his clientele and staff to the soon-to-open day spa. Donnelly would manage the spa, continue his hairstyling business, and strive to increase business.

1. Collectively, we refer to URB and WHE as Urban Retreat.

In exchange, if certain longevity or gross revenue goals were met, Donnelly would gain ownership in URB and WHE, an increase in salary, and a seat on WHE's board of directors. Willis personally assured Donnelly that he would provide the financial backing for the business.

Donnelly executed a Letter Agreement on July 10, 1989, which set forth the levels of URB and WHE stock ownership and salary he would attain over the years: (1) 25% URB stock and 10% of WHE stock after 12 months' employment or when the spa's gross revenues equaled those made in Donnelly's salon the prior year; (2) annual increases of URB stock, up to 50%, contingent on yearly half-million-dollar gains in gross revenues; (3) $110,000 salary for two years; and (4) five percent of gross revenues as salary in year three and beyond. The Letter Agreement also provided each shareholder the right of first refusal to purchase another shareholder's stock. Further, it set forth the value of Donnelly's shares should his employment terminate: the greater of two times earnings in the prior year or assets minus liabilities.

Donnelly transferred his profitable business to URB, bringing several hairstylists, manicurists, and other salon personnel with him. URB held its grand opening in mid-December 1989. The gross revenues soon surpassed those of Donnelly's previous salon.

However, Urban Retreat's costs were great, and the construction expense had exceeded projections. Further, Willis and one other minimal shareholder had provided only $1,000 as capital contribution. The

$800,000 construction loan was in URB's name, although Willis provided a $600,000 certificate of deposit as collateral. Additionally, although Willis personally transferred almost $297,000 to URB, he listed it as a loan instead of capital contribution.[2] Thus, just six weeks after its grand opening, URB was over $1,000,000 in debt.

Willis quickly recognized the need to "stop the bleeding." There is evidence that he proposed suspending Hite's $7,000 a month salary even before the grand opening. He also considered transferring Hite's employment to WHE instead of URB. In early 1990, Hite left Urban Retreat.[3] On January 1, 1990, just two weeks after the spa opening, the minimal shareholder transferred his 100 shares to Willis, leaving Willis the sole shareholder of URB's 1,000 issued shares.[4] In April 1990, Willis hired a second consultant as URB's "non-operating chief financial officer." Willis promised to sell this man 25% of URB stock for $1 after Willis's "capital investment" had been repaid.

Nonetheless, URB continued to lose money. Willis was thus faced with a financial quandary: he had personally guaranteed URB's $14,000 a month lease, pledged his $600,000 CD as collateral for the construction loan, and invested $540,500 of cash by December 31, 1990. If URB did not meet its outside financial obligations, Willis would personally lose a large amount of money. The Letter Agreement with Donnelly added to the financial quagmire. It prevented Willis from firing Donnelly within the first 12 months of business, except for gross misconduct. It also

---

2. This "loan" was not approved by resolution of URB's board of directors, as required by the URB by-laws. In contrast, the $800,000 construction loan had been approved by the board (consisting of Willis, the minimal shareholder, and Hite).

3. By terminating his employment so quickly, Hite never earned 25% of URB stock as contemplated in his own letter agreement with Willis.

4. URB was authorized to issue up to 100,000 shares.

guaranteed Donnelly's stock ownership at the 12–month mark because gross revenues were on track. After 12 months, Willis could fire Donnelly and his shares would be worthless under the Termination provision of the Letter Agreement. However, Donnelly was by far the greatest revenue producer in the spa.

In March 1991 (after Donnelly met revenue goals ensuring him 25% URB stock and 10% WHE stock), Willis sought to change Donnelly's status. Willis was no longer willing to provide 100% of the financing unless he was still "100% owner." He wanted Donnelly to "step up" and "act like an owner." Legal documents were prepared, but never signed, capping Donnelly's ownership at 25% of URB stock and rescinding the Letter Agreement. Willis also wanted Donnelly to assume some of the debt, but Donnelly declined to do so.

Certainly, it made good business sense for Willis to minimize his potential losses and work towards profitability. However, Willis then continued to control Urban Retreat in disregard of Donnelly throughout the years. He rationalized that Donnelly had relinquished ownership when he refused to "act like an owner." When Donnelly asked about stock issuance, Willis would assure him that he intended to live up to the Letter Agreement, but asked to delay until the business "turned the corner." At the same time, Willis continued to use URB as a wholly-owned, sub-chapter S-corporation for tax benefits. Willis also unilaterally cut Donnelly's salary[5] in March 1992, supposedly temporarily, and

diminished his management responsibilities. Willis continued to make "loans" to URB although there is no evidence such loans were approved by the board of directors.[6]

Additionally, Willis controlled Urban Retreat through his wife, Francie. He supposedly transferred all of his URB stock to her. A "unanimous consent of the board" was prepared in March 1991, but never signed, reflecting URB's permission for Francie to convey to Willis a beneficial interest in URB's option to buy its realty. Then, on July 30, 1992, Willis and Francie personally purchased the URB realty for $1.6 million. On that day, Francie, acting as president, signed a waiver of URB's option. Included in the waiver was the statement that a "third party" wished to buy the realty and that "said third party has required a release" of URB's option. One week after closing, the Willises amended URB's lease, increasing its total rent over the lease term by $280,000. URB's monthly rent of $14,000 remained the same, though the Willises' monthly note was then only $10,800. Further, in the new lease, the Willises obligated URB to pay the property taxes. Finally, in March 1993, Francie signed a promissory note on behalf of URB, documenting that it owed her husband $1,897,896 in loans.[7]

Over these years, Donnelly's personal hairstyling revenues had increased, as did the overall gross revenues of the spa. In fact, every revenue goal in the Letter Agreement was met. Each time he asked

5. From 5% of gross revenues to $3,000 per month, 60% of his hair styling, 10% of his product sales, and a 5% commission each month the Hair Department exceeded $100,000 in revenue.

6. By 1992's end, Willis's cash loans equaled $1,746,643. At 1993's end, this amount had increased to $1,897,896.

7. Again, no evidence exists that URB's board of directors approved this "evidence of indebtedness ... issued in its name" as required by the by-laws. Supposedly, Willis, Francie, Donnelly, and two others were board members until March 17, 1993, when Francie, as "sole shareholder," made herself sole director.

about his stock, Willis would assure Donnelly that he would live up to the agreement. Finally, in late November 1994, Francie learned that Donnelly was helping a friend plan a new day spa. When she learned of this, she asked Donnelly to leave Urban Retreat.

## B. Loans to Donnelly

In January 1992, Donnelly asked Willis to borrow $18,000. He signed a promissory note for that amount at eight percent annual interest, to be repaid $500 a month from Donnelly's paychecks. On July 1, 1993, Willis loaned Donnelly an additional $20,000. He rolled the previous note into the second, for a total principal of $31,183.70, at eight percent annual interest, to be repaid from Donnelly's paychecks. The entire amount would become due if Donnelly's employment at URB terminated. After November 1994, Donnelly stopped paying the loan. Francie sent him a demand letter, wishing him well in his new endeavor and urging him to "honor the trust that Mike [Willis] placed in you."

## C. The Lawsuit

When Donnelly ignored Francie's demand letter, Willis filed suit for the outstanding $26,982.58. Donnelly reciprocated by suing Willis, Francie, URB, and WHE for breach of the Letter Agreement and breach of fiduciary duty, among other claims. The jury ultimately found that URB and WHE breached the Letter Agreement; Willis and Francie ratified it; Donnelly was entitled to 50% of URB stock and 10% of WHE stock; and that contract damages were $1.7 million. The jury further found that Willis had breached his fiduciary duty to Donnelly and that those damages were $1.7 million. The jury rejected limitations questions for both issues. As for the loans to Donnelly, the jury found that he defaulted on the prom-

issory note and owed $26,982.56 to Willis. Finally, the jury awarded both sides $400,000 in attorney's fees.

Under the trial court's judgment, Donnelly was awarded (1) $1.7 million for the fiduciary duty claim; (2) $1.7 million for the contract claim; (3) a constructive trust on the Urban Retreat realty and on 50% of all URB stock and 10% of all WHE stock possessed by the Willises or Urban Retreat; and (4) $400,000 in attorney's fees. The trial court awarded Mike Willis (1) $26,982.56 for the promissory note and (2) $400,000 in attorney's fees.

## BREACH OF CONTRACT

In nine of the Willises' issues and three of Urban Retreat's issues, they attack the judgment against them for breach of contract.

## A. Breach of Contract Jury Findings

In their first, second, and third issues, the Willises argue that Donnelly waived breach of contract because he failed to request jury findings that Willis and Francie breached the Letter Agreement. However, whether a party has breached a contract is a question of law for the court, not a question of fact for the jury. *Meek v. Bishop, Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Garza v. Southland Corp.*, 836 S.W.2d 214, 219 (Tex.App.-Houston [14th Dist.] 1992, no writ). "The court determines what conduct is required by the parties, and, insofar as a dispute exists concerning the failure of a party to perform the contract, the court submits the disputed fact questions to the jury." *Meek*, 919 S.W.2d at 808; *see ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 n. 3 (Tex.App.-Dallas 1990, no writ). When facts are undisputed or conclusively established, there is no need to submit those issues to the jury.

*Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971); *Meek*, 919 S.W.2d at 808.

■ Here, the existence of the Letter Agreement was undisputed; it was also undisputed that Donnelly never received the benefits promised in the Letter Agreement. The issues that were disputed, such as whether Donnelly waived enforcement of the contract (Question 6) and whether the Willises ratified it (Question 10), were submitted to the jury. It is uncontroverted that the Willises failed to abide by the Letter Agreement. Thus, it was not necessary to submit the question about their breach to the jury, and Donnelly's failure to request such a question does not result in waiver. Accordingly, we overrule the Willises' first three issues.

## B. Signatories to the Contract

■ In their fourth and fifth issues, the Willises argue they could not have breached the Letter Agreement because they were not signatories to it. The parties listed in the Letter Agreement were Willis, Hite, URB, WHE, and Donnelly. It was signed by Hite (individually and as president of WHE) and Donnelly. Willis's signature line was crossed out.

The Willises contend their signatures or an authorized agent's signature was required under the statute of frauds. The statute of frauds provides:

> (a) A promise or agreement ... is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> (1) in writing; and
>
> (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

TEX. BUS. & COM.CODE ANN. § 26.01(a)(2) (Vernon 2002). The Willises argue that they did not sign the contract nor is there evidence that Hite had authority to bind them.

■ In their argument, the Willises ignore the jury's finding that they ratified the contract. Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act that did not then legally bind him and that he had the right to repudiate. *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 788 (Tex. App.-Dallas 2002, pet. denied). Such approval can be given through act, word, or conduct. *K.B. v. N.B.*, 811 S.W.2d 634, 638 (Tex.App.-San Antonio 1991, writ denied); *see Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied) (ratification can occur if one affirmatively acknowledges a contract). Further, whether Hite was the Willises' authorized agent is of no consequence. *See Hays v. Marble*, 213 S.W.2d 329, 333 (Tex.Civ.App.-Amarillo 1948, writ dism'd). "One may ratify the acts or contract of another ... whether the other was his agent and exceeded his authority as such or was not his agent at all." *Id.* Thus, it is the Willises' ratification of the contract that binds them to perform, not their signatures. We overrule the Willises' fourth and fifth issues.

## C. Ratification

In their sixth issue, the Willises contend that their ratification of the contract is insufficient to support recovery for breach of contract. They again urge that a separate jury finding of breach is necessary. We have already overruled this contention in our disposition of issues one through three.

■ Additionally, in a single sentence in issue six, the Willises argue the evidence is legally and factually insufficient to show that they ratified or breached the Letter Agreement. Bare assertions of error, without citation to the record, present

nothing for review. Tex.R.App. P. 38.1(h); *Thedford v. Union Oil Co. of Ca.*, 3 S.W.3d 609, 615 (Tex.App.-Dallas 1999, pet. denied). When a party fails to include citation of authority or discussion of relevant facts to support its sufficiency contention, we will not perform an independent review of the record and applicable law to determine whether the error complained of occurred. *Ryan v. Abdel–Salam*, 39 S.W.3d 332, 336 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Thus, the Willises' sufficiency challenge is waived. Further, their bald assertion of legally insufficient evidence is readily defeated, given Mike Willis's own testimony that he intended to abide by the Letter Agreement and their admission that Donnelly never received his stock.

### D. Waiver through Pre–Suit Conduct

■ In the Willises' seventh issue and Urban Retreat's first and third issues, appellants contend that, as a matter of law, Donnelly waived breach of contract by his pre-suit conduct. Waiver is an affirmative defense. Tex.R. Civ. P. 94; *Rogers v. Cont'l Airlines, Inc.*, 41 S.W.3d 196, 198 (Tex.App.-Houston [14th Dist.] 2001, no pet.). "In Texas, waiver occurs when a party intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 592 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)). A party's express renunciation of a known right may establish waiver. *Id.* It is well established that waiver turns on the question of intent. *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). Whether waiver has occurred is therefore

ordinarily a question of fact for a jury to decide. *Tenneco*, 925 S.W.2d at 643. In this case, the jury found in Question 6 that Donnelly had not waived breach of contract.[8]

■ When an appellant attacks the legal sufficiency of an adverse answer to a finding on which it has the burden of proof, the appellant must overcome two hurdles. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if no evidence supports the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.*; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

■ There is evidence in the record supporting the jury's finding that Donnelly did not intentionally relinquish a known legal right. Donnelly testified, "Mr. Willis ... continually told me that ... once we turned the corner, you know, that he would at some point live up to the Letter Agreement. But until that time, I had to live by whatever compensation changes were enacted by Mr. Willis." According to Donnelly, Willis would tell him that he could "not issue stock at this time." Mike Willis's testimony corroborates Donnelly's account. He stated that he merely delayed issuing the stock and that had he been asked, he would have complied with the Letter Agreement. Because there is evidence supporting the jury's finding, we do not review the record for evidence to the contrary. Accordingly, we overrule

---

**8.** Question 6: "Was the failure to comply [with the Letter Agreement] excused? Failure to comply with an agreement is excused ... if compliance was waived by Dan Donnelly. A waiver is an intentional surrender of a known right or intentional conduct inconsistent with that right." The jury answered, "No."

the Willises' seventh issue and Urban Retreat's first and third issues.

### E. Statute of Limitations

In the Willises' eighth issue and subpart (a) of Urban Retreat's second issue, they contend that Donnelly's breach of contract claim is barred by the statute of limitations. A breach of contract action is subject to a four-year statute of limitations. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). Donnelly filed his lawsuit in August 1995. The jury found there was no failure to comply before August 24, 1991, making Donnelly's claim timely.

Limitations is an affirmative defense, which the asserting party must prove. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988). Generally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex.1998). The time for accrual of a cause of action is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). A breach of contract claim accrues when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). Appellants argue that when they failed to transfer the first 25% of stock in 1990, the contract was breached and Donnelly's statute of limitations began to run.

In contrast, Donnelly argues that his suit was timely, citing two cases with facts substantially similar to the facts in this case, *Pickett v. Keene*, 47 S.W.3d 67 (Tex. App.-Corpus Christi 2001, pet. dism'd), and *Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). Both *Pickett* and *Intermedics* involved contracts in which portions of ownership in businesses were to be transferred to parties working for each busi-ness. In each case, deadlines for such transfers were delayed by the parties. In each case, the business ultimately tried to avoid transferring any portion of ownership and fired the worker. And in each case, the business claimed on appeal that because breach had occurred with the first missed deadline many years before, the case was barred by the statute of limitations. In both cases, the appellate court held that the cause of action accrued at the employee's termination (when the employer clearly repudiated the agreement to transfer ownership). *Pickett*, 47 S.W.3d at 77; *Intermedics*, 683 S.W.2d at 847.

In asserting the statute of limitations, appellants disregard the undisputed evidence that deadlines were postponed so the Willises could reap tax benefits and URB could "turn the corner." "Even when an exact date of performance is specified in the contract, this provision can be waived by the parties." *Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.*, 66 S.W.3d 340, 347 (Tex.App.-Tyler 2001, pet. denied); *see Intermedics*, 683 S.W.2d at 846; *see, e.g., Pickett*, 47 S.W.3d at 77. Further, an extension of time to perform can be express or implied and does not affect the other provisions of the contract. *Intermedics*, 683 S.W.2d at 846. The evidence indicates that appellants intended to honor the agreement "at some point." Donnelly relied on Willis's assurances and accepted the delays. There was no clear intent by appellants to repudiate the Letter Agreement until Donnelly's termination. *See Pickett*, 47 S.W.3d at 77; *Intermedics*, 683 S.W.2d at 847. Thus, the contract claim did not accrue before August 24, 1991, and Donnelly's claims were timely asserted in August 1995. We overrule the Willises' issue eight and Urban Retreat's issue two, subpart (a).

## F. Response to Jury Note

 In the Willises' ninth issue and Urban Retreat's issue two, subpart (b), appellants contend the trial court improperly responded to the following jury note about the statute of limitations:

Does an answer of yes to question no. 7 [the statute of limitations question] indicate that the failure to comply [with the Letter Agreement] happened before that date and excludes the possibility that it happened on or after that date? [9]

We find that appellants' complaint is waived because (1) the record fails to sufficiently reflect (a) that a supplemental instruction was given to the jury or (b) the contents of such an instruction; and (2) appellants incorrectly and untimely presented their requested supplemental instruction to the trial court.

 To show error regarding a supplemental jury instruction, the record must reflect the contents of the instruction and that the instruction was given. *Keene Corp. v. Gardner*, 837 S.W.2d 224, 228–29 (Tex.App.-Dallas 1992, writ denied). In this case, neither the jury's note nor the trial court's written response are included in the clerk's record.[10] Further, while the reporter's record repeats the jury's question word-for-word, it does not contain the trial court's supplemental instruction verbatim. The trial court's response was apparently written, extensively discussed by the parties and the court, and altered throughout the discussion. However, the final wording of the response is not reflected in the reporter's record. Additionally, at the end of discussion about the jury's note, the reporter's record denotes only "jury deliberating," not whether an instruction was actually delivered to the jury. *See id.* (holding court reporter's notation that "whereupon the jury continued to deliberate" was insufficient to show court delivered additional charge). Thus, there is an insufficient record showing either the contents of the supplemental instruction or that the instruction was given to the jury.

 Next, appellants argue the trial court should have provided the supplemental question, "What is the earliest of any breach you have found?" in response to the jury's note. However, appellants have waived error because they requested this supplemental question orally during jury deliberations. "To complain of the trial court's omission of a requested instruction on appeal, a party is obliged to make a *written* request to the trial court for a *substantially correct instruction*." *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (emphasis added). Appellants' oral request is thus unsatisfactory. Further, the appellants filed a written request for this question too late, *after* the jury returned its verdict. Waiting until after verdict to file a request for a supplemental jury instruction is untimely. *See Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 871 (Tex.App.-Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex.1999).

Additionally, appellants have not provided case law that their proposed supplemental question was legally correct, while Question 7 was not. The statute of limitations was their affirmative defense, and they voiced no objection to Question 7 during the charge conference. Lastly, appellants' argument about their proposed supplemental jury question simply reiterates their previous points of error, which

9. Question 7: "Did the failure to comply . . . occur prior to August 24, 1991?"

10. Nine other notes from the jury, and the trial court's responses, do appear in the clerk's record.

we have overruled, about accrual of a contract claim.

For the above reasons, we overrule the Willises' issue nine and Urban Retreat's issue two, subpart (b).

### BREACH OF FIDUCIARY DUTY

The Willises' next ten issues address Mike Willis's breach of fiduciary duty.

### A. Existence of Majority Shareholder/Minority Shareholder Relationship

In their tenth, eleventh, and twelfth issues, the Willises argue that there is no evidence of breach of fiduciary duty because, after October 1990, there was never a majority-minority shareholder relationship between Willis and Donnelly. Specifically, Willis argues that Francie became sole shareholder of Urban Retreat in October 1990, and thus he had no majority shareholder's duty after that time. Further, he argues that Donnelly was never a shareholder.

 When a party without the burden of proof challenges the legal sufficiency of the evidence to support an adverse jury finding, we construe the issue as a "no evidence" point. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 183–84 (Tex.App.-Fort Worth 1995, no writ). In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993).

 The record includes evidence that Willis transferred stock to Francie as late as October or November 1991. Addition-

ally, Francie testified that a magazine article in January 1991 identified her husband and Donnelly as the owners of Urban Retreat. This article was written approximately one month after the Letter Agreement contemplated transfer of 25% of URB stock and 10% WHE stock to Donnelly. Further, shortly after March 1991, she was privy to a meeting between her husband and Donnelly in which Willis asked Donnelly to cap his ownership interest in URB at 25%. This is more than a scintilla of evidence showing that both Donnelly and Willis were shareholders in Urban Retreat after October 1990. Accordingly, we overrule issues ten, eleven, and twelve.

### B. Claim Sounds in Contract Only

In issue 13, the Willises contend that a party cannot claim breach of fiduciary duty when the only alleged damages are the subject of a contract. The Willises argue that Donnelly's only alleged damages arise from breach of the Letter Agreement; thus, the claim sounds only in contract. *See Southwestern Bell Tel. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). It is often difficult to determine whether a party's cause of actions sound in contract or tort or both—*i.e.*, a "contort." *Ludlow v. DeBerry*, 959 S.W.2d 265, 275 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *see Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617 (Tex.1986). A two-part test, set forth in *DeLanney*, guides this determination. 809 S.W.2d at 494–95.

 First, we look to the source of the duty to act. *Id.* at 494. If the conduct in question gives rise to liability only because it breaches an agreement between the parties, the claim ordinarily sounds in contract. *Id.* In this first step, we "must look to the substance of the cause of action and not necessarily the manner in which it was pleaded." *Reed*, 711 S.W.2d at 617–

18. Second, we consider the nature of the remedy or damages sought by the claimant. *DeLanney*, 809 S.W.2d at 494. "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Reed*, 711 S.W.2d at 618.

Additionally, the contract between the parties may create both contract and tort duties. *Id.; see DeLanney*, 809 S.W.2d at 494 n. 1 ("[S]ome contracts involve special relationships that may give rise to duties enforceable as torts....."). "[A] plaintiff is not precluded from asserting a tort cause of action solely because his damages are analogous to the damages sought in a contractual claim." *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 674 (Tex.App.-Houston [1st Dist.] 1996, no writ).

In this case, breach of contract arose from failure to transfer shares to Donnelly and failure to compensate him at the rate set forth in the Letter Agreement. Donnelly alleged that breach of fiduciary duty arose from Willis's (1) purchase of the URB realty; (2) lease of the realty to URB for the total debt on the property; (3) treatment of capital contributions as loans; (4) representation that Urban Retreat was worthless; and (5) personal use of Urban Retreat's tax benefits. The damages for breach of contract, more fully addressed below, were the unpaid compensation and fair market value of the Urban Retreat stock. In contrast, the damages for breach of fiduciary duty involved the value of the realty and the benefits personally taken by Willis. Thus, Donnelly's injuries did not arise solely from breach of the Letter Agreement. Accordingly, we do not agree that the damages sought were solely contract damages. We overrule issue thirteen.

## C. Existence of Fiduciary Relationship

In their fourteenth issue, the Willises contend the trial court erred in finding that a fiduciary relationship existed between Willis and Donnelly and in instructing the jury that such a relationship existed.[11] Whether a fiduciary relationship exists is normally a question of fact for the jury. *Procom Energy, L.L.A. v. Roach*, 16 S.W.3d 377, 382 (Tex.App.-Tyler 2000, pet. denied); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *Farah*, 927 S.W.2d at 675. "When the issue is one of no evidence or conclusive evidence, the issue is a question of law." *Farah*, 927 S.W.2d at 675. Here, the Willises contend that there was no evidence of a fiduciary relationship or, conversely, the evidence conclusively shows *no* fiduciary relationship exists.

"[A] co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder." *Hoggett*, 971 S.W.2d at 488. Instead, the existence of such a duty depends on the circumstances. *Pabich v. Kellar*, 71 S.W.3d 500, 504–05 (Tex.App.-Fort Worth 2002, pet. denied). For example, a fiduciary duty exists if a confidential or "informal" relationship exists. *Id.* at 505; *In re Estate of Fawcett*, 55 S.W.3d 214, 220 (Tex. App.-Eastland 2001, pet. denied). Further, fiduciary relationships may be created by contract; through the repurchase of a shareholder's stock in a closely held corporation, *see Fawcett*, 55 S.W.3d at 220; in

---

11. In Question 22, the trial court instructed the jury, "Mike Willis owed Dan Donnelly a fiduciary duty."

certain circumstances in which a majority shareholder in a closely held corporation dominates control over the business, *Hoggett*, 971 S.W.2d at 488 n. 13; and in closely held corporations in which the shareholders "operate more as partners than in strict compliance with the corporate form." *DeBord v. Circle Y of Yoakum, Inc.*, 951 S.W.2d 127, 133 (Tex.App.-Corpus Christi 1997), *rev'd on other grounds*, 967 S.W.2d 352 (Tex.1998).

■ We disagree that there was no evidence of, or alternatively evidence conclusively disproving, a fiduciary relationship. There is evidence tending to show that Mike Willis engaged in oppressive conduct [12] and dominated control over the business. *See Hoggett*, 971 S.W.2d at 488 n. 13. For instance, Willis alone reaped personal tax advantages by treating URB as a wholly-owned business. Willis, not Urban Retreat or the board of directors, hired a new CEO and promised him ownership in URB if Willis's capital investment was repaid. Further, the evidence shows that although Willis promised to provide cash capital contributions, he continually treated all but $1,000 of such contributions over the years as loans. There is evidence that Willis's promises to provide capital were inducements to Donnelly to join the business. *See Willis*, 997 S.W.2d at 801 (defining oppressive conduct as that which defeats the minority shareholder's

expectations that were reasonable and central to the decision to join the venture). The evidence shows that Willis kept Urban Retreat thinly capitalized and thus limited its on-going ability to operate. And, if debts always surpassed income and assets, Donnelly's shares would be worth little to nothing under the Termination provision of the Letter Agreement (defining share value as the greater of two times prior year's earnings or assets minus liabilities).

Further, after Willis could not convince Donnelly to cap his ownership interest, he found a way to purchase the spa realty for himself. First, a corporate document was prepared allowing Francie to assign Willis an interest in the spa's option. Later, he bought the realty, having Francie waive URB's option the day of closing. Although URB supposedly could not afford to buy the realty, the Willises then charged the total debt to URB through rent.[13] By purchasing the realty, Willis also ensured that Donnelly's stock value decreased under the Letter Agreement.[14] These could be construed as purposeful actions to dilute the value of shares while employing the business and its assets solely for Willis's own benefit. *See generally Duncan v. Lichtenberger*, 671 S.W.2d 948, 953 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.) (citing *Patton v. Nicholas*, 154 Tex. 385, 279 S.W.2d 848 (1955), regarding lowering of minority's share value).

*Willis v. Bydalek*, 997 S.W.2d 798, 801 (Tex. App.-Houston [1st Dist.] 1999, pet. denied).

---

12. "Oppressive conduct" is defined as:
1. majority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or
2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

13. The Willises argued that URB could not afford to buy the realty, although evidence suggests that Willis's improper characterization of capital as debt helped place the business in its allegedly poor financial condition.

14. Under the Letter Agreement, Donnelly could sell his stock but first had to offer to sell them to other shareholders using the equation "real estate appraised at market value plus previous twelve months' gross revenue."

Additionally, the evidence shows that Willis transferred all the URB stock to Francie as late as November 1991. By that time, Donnelly was a minority owner in the business, and he had a right of first refusal to purchase the shares per the Letter Agreement. Willis did not extend this opportunity to Donnelly. *See Thompson v. Hambrick*, 508 S.W.2d 949, 951–54 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.) (fact issue whether majority shareholder's sale of shares without offering right of first refusal to minority shareholder was a breach of fiduciary duty). Further, Willis unilaterally cut Donnelly's salary and tried to cap his ownership interest, after delaying issuance of his stock. Willis's own discovery answers reveal that he decided Donnelly was not acting like an owner, and he justified treating him like a nonowner for that reason. *See Davis v. Sheerin*, 754 S.W.2d 375, 382 (Tex.App.-Houston [1st Dist.] 1988, writ denied) (conspiring to deprive one of ownership in a corporation is oppressive conduct). Finally, case law indicates Willis would owe a fiduciary duty to Donnelly in repurchasing his shares. *See Fawcett*, 55 S.W.3d at 219–20.

 These examples defeat the Willises' argument that only legal absolutes existed, *i.e.*, no evidence supported the existence of a fiduciary relationship or that they conclusively disproved the existence of a fiduciary relationship.[15]

 Lastly, the Willises contend because it is a question of fact, the trial court erred in instructing the jury that a fiduciary relationship existed.[16] However, the Willises failed to object to Question 22 in the charge on this basis.[17] Instead, they objected as follows:

> Plaintiffs would object to Question No. 22 in that there is no evidence to support submission of the issue.

> Plaintiffs object to the submission of Question No. 22 because as a matter of law, Mike Willis owes no fiduciary duty to Dan Donnelly.

15. The Willises include a catchall, multifarious assertion of error at the end of this portion of their argument, contending there is "no evidence, no legally sufficient evidence, and no factually sufficient evidence that Michael Willis had a fiduciary relationship with Donnelly...." We are not required to address multifarious issues. *See State v. Interstate Northborough P'ship*, 8 S.W.3d 4, 7 n. 2 (Tex.App.-Houston [14th Dist.] 1999), *rev'd on other grounds*, 66 S.W.3d 213 (Tex.2001); *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 51 (Tex.App.-San Antonio 1999, pet. denied). Factual sufficiency analysis requires us to detail the evidence relevant to the issue and, if reversing, clearly state in what regard the contrary evidence greatly outweighs the evidence in support of the issue. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (op. on reh'g). Given the Willises' bare assertion of error, without substantive analysis, legal authority regarding factual insufficiency, and appropriate citation to the record for factual insufficiency, *see Ryan v. Abdel–Salam*, 39 S.W.3d 332, 336 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Keever v. Finlan*, 988 S.W.2d 300, 314 (Tex.App.-Dallas 1999, pet. dism'd), we decline to perform a review of the record and law to determine whether there is factually insufficient evidence of a fiduciary relationship.

16. It is error for a trial court to instruct a jury that shareholders in a closely held corporation owe each other a fiduciary duty as a matter of law. *Pabich*, 71 S.W.3d at 505; *Kaspar v. Thorne*, 755 S.W.2d 151, 155 (Tex.App.-Dallas 1988, no writ).

17. The Texas Pattern Jury Charges includes a chapter about fiduciary duty. TEX. PATTERN JURY CHARGES PJC 104.1–104.2 (2000). PJC 104.1 asks whether a fiduciary duty exists between parties. In this case, no one requested PJC 104.1 in the charge, and Willis did not object to its omission. PJC 104.2 then asks if one party complied with its fiduciary duty to another. In Question 22, the trial court tracked the language of PJC 104.2 almost word-for-word.

These objections were insufficient to alert the trial court that existence of a fiduciary relationship was a fact question for the jury. *See State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (test is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling); *see, e.g., McAllister v. Oman*, 2001 WL 870037, at *1 (Tex.App.-Houston [14th Dist.] Aug. 2, 2001, no pet.) (not designated for publication). Instead, the objections raise "no evidence" and "conclusive evidence," which we rejected above. To preserve error, the Willises were required to object that the question was omitted. *See* TEX.R. CIV. P. 278. The record is devoid of the slightest indication from the Willises that existence of a fiduciary relationship was a jury question. Thus, the trial court's error, if any, is not a ground for reversal in this case. *See id.*

Accordingly, we overrule issue 14.

### D. Failure to Obtain Findings

In their fifteenth issue, the Willises argue that Donnelly failed to obtain a jury finding on the existence of a fiduciary relationship. As we addressed in regard to issue 14, the Willises did not preserve error to complain about the lack of a jury finding. In their sixteenth issue, the Willises contend that Donnelly "failed to secure a finding as to ownership of any shares." This point of error is vague, and the Willises offer no argument, citation to the record, nor authority in support of it. They have waived this issue. *Thedford*, 3 S.W.3d at 615; *Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 304–05 (Tex.App.-Houston [14th Dist.] 1995, no writ) (an issue not supported by authority is waived). Accordingly, we overrule issues 15 and 16.

### E. Burden of Proof

In issue 17, the Willises complain that the trial court improperly placed the burden of proof for breach of fiduciary duty on Mike Willis. The Willises argue that before the burden of proof could be placed on Mike Willis, Donnelly was first required to establish the existence of a fiduciary relationship. This argument is an attempt to circumvent the Willises' failure to object or to request the missing jury question on the existence of a fiduciary relationship. Further, the profiting fiduciary has the burden to prove questioned transactions were "fair, honest, and equitable." *Estate of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *Miller v. Miller*, 700 S.W.2d 941, 947 (Tex.App.-Dallas 1985, writ ref'd n.r.e.); *see Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508–09 (Tex.1980). The trial court did not misplace the burden of proof. We overrule issue seventeen.

### F. Standing to Sue

In issue 18, the Willises argue that Donnelly was required to bring a shareholder's derivative suit to assert claims on behalf of the corporation for breaches of fiduciary duty. However, from our review of Donnelly's pleadings, we conclude that he did not sue on behalf of the corporation. He only sued in an individual capacity.

To the extent the Willises are actually arguing that no fiduciary duties flowed to Donnelly individually, we refer to our analysis of issue fourteen. As discussed, there are instances in Texas law in which shareholders in closely held corporations owe other shareholders fiduciary duties. As we acknowledged in discussing issue fourteen, the existence of such a fiduciary relationship is a question of fact for the jury. As we further held, the Willises cannot complain on appeal about the absence of a jury finding because they failed to pre-

serve error. Further, we disagreed with the Willises' two contentions that (1) there was "no evidence" of a fiduciary relationship; or (2) they conclusively proved the nonexistence of such a relationship. We believe the evidence raised a fact issue on the existence of a fiduciary relationship between Willis and Donnelly, individually.

Accordingly, we overrule issue 18.

## G. Statute of Limitations on Breach of Fiduciary Duty

■ In their nineteenth issue, the Willises contend that Donnelly's claim for breach of fiduciary duty is barred by the statute of limitations. There is a four-year statute of limitations for breach of fiduciary duty. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). The Willises argue that the only alleged breach of fiduciary duty was Willis's failure to disclose information before Donnelly executed the Letter Agreement on July 10, 1989. Donnelly did not sue until August 25, 1995, more than four years later.

However, Donnelly's petition also alleged Mike Willis's self-dealing, treating capital contributions as loans, failing to keep proper and accurate financial records, and improperly transferring stock to Francie. Evidence shows that (1) Francie received 100% of the URB shares as late as October or November 1991; (2) Mike Willis made numerous "loans" to URB after August 1991; and (3) Mike and Francie bought the URB property and waived the spa's option to purchase it in July 1992. Because these alleged breaches of fiduciary duty occurred within four years of suit, Donnelly's claims are not barred by the statute of limitations. We overrule issue nineteen.

## CONSTRUCTIVE TRUST

In their twentieth, twenty-first, and twenty-second issues, the Willises contend that the trial court erroneously imposed a constructive trust on the URB realty, 50% of URB stock and 10% of WHE stock because (1) a fiduciary relationship did not exist or did not exist apart from the dealings made the basis of the lawsuit; (2) no fraud was established; (3) no pleadings support imposition of equitable relief; (4) there was no commingling; (5) equitable relief is improper to enforce contractual obligations and where the plaintiff gave services; (6) post-verdict evidence was improperly admitted; (7) imposition of the constructive trust violates their right to trial by jury and due process; (8) there was no evidence, insufficient evidence, and no finding upon which to impose a constructive trust; (9) constructive trusts should not be imposed where money damages are available; and (10) a constructive trust is improper because Donnelly had unclean hands. In issues five, six, and seven, Urban Retreat argues many of these same subissues and also claims that laches prevent imposition of the constructive trust.

## A. Error in Imposing Constructive Trust

We address the first eight subissues, which constitute the Willises' issue 20 and Urban Retreat's issue five and portions of issue six.[18]

■ Again, appellants contend no fiduciary relationship existed. Accordingly, we refer to our disposition of issue 14. Second, appellants argue that fraud must be shown before a constructive trust is imposed. However, "[a]ctual fraud, as well as breach of a confidential relationship, justifies the imposition of a construc-

---

18. Urban Retreat does not argue subissues three and eight.

tive trust." *Meadows v. Bierschwale,* 516 S.W.2d 125, 128 (Tex.1974); *see Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 560 (1962); *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 405 (1960); *see also Duncan v. Lichtenberger,* 671 S.W.2d 948, 952, 954 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.) (stating fraud is not required for breach of fiduciary duty; equitable relief is available for such breach).

Third, appellants contend that there are no pleadings to justify imposition of the constructive trust on the realty. They do not cite any authority for the proposition that Donnelly, in seeking a constructive trust, must plead the specific property to which it should attach. In his petition, Donnelly sought a constructive trust because the Willises had been unjustly enriched by retaining all the Urban Retreat stock. His pleadings for a constructive trust also refer to and incorporate pleadings about Willis's self-dealing, false characterization of capital, complete control of the business, and inaccurate record keeping. Further, Donnelly generally sought "all such other damages as [he] may be justly entitled," and all "relief, at law or in equity[,] to which [he] is justly entitled." The appellants did not specially except to the pleadings for equitable relief. "When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader." *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex.2000). We hold that Donnelly's pleadings are sufficient to support a claim for equitable relief, justifying the court's imposition of a constructive trust. Accordingly, we overrule this subissue.

Fourth, appellants argue that a constructive trust was improper because the URB realty was never commingled with Urban Retreat stock. The cases appellants cite show that a constructive trust is proper when a fiduciary commingles assets. *See Graham v. Turner,* 472 S.W.2d 831, 840 (Tex.Civ.App.-Waco 1971, no writ) (shareholder in closely held corporation wrongly sold corporate assets and mingled proceeds with his own assets); *Andrews v. Estate of Andrews,* 326 S.W.2d 203, 207 (Tex.Civ.App.-Waco 1971, no writ) (plaintiffs sought percentage of deceased's estate on theory that farm income from their land had been commingled with the estate). However, neither case stands for the proposition that commingling is a prerequisite for imposition of a constructive trust. Further, commingling was not an issue at trial in this case. Appellants' argument is thus inapposite.

Fifth, appellants argue that a constructive trust was improper (1) to enforce contract rights and (2) because Donnelly "parted with services, not property," and the proper remedy for services is payment. As detailed later in this opinion, we are reversing the contract claim because the jury considered the wrong measure of damages. Thus, we are also reversing the portion of the constructive trust that addressed Donnelly's contract remedies. Additionally, we have already held that Donnelly sought damages for breach of fiduciary duty different from and in addition to those for breach of contract. Further, a constructive trust has a "very broad function of redressing wrong or unjust enrichment in keeping with the basic principles of equity and justice." *Ginther v. Taub,* 675 S.W.2d 724, 728 (Tex.1984). To disallow a constructive trust because a party renders services only is "an unduly restrictive view of the remedy of constructive trust." *Meadows,* 516 S.W.2d at 131. We overrule this subissue.

Sixth, appellants protest that the trial court improperly admitted evidence postverdict, specifically the affidavit of Sal Rodriguez, which was attached to Donnel-

ly's supplemental motion to enter judgment. Donnelly attached the affidavit as support for his post-verdict request to order amended URB tax returns. Appellants objected to the affidavit, but there is no ruling in the record as required by Rule of Appellate Procedure 33.1(a)(2). Further, the record does not reflect whether the trial court actually considered the affidavit. To the contrary, the trial court did not order amendments to the tax return. We thus overrule this subissue.

▬ Seventh, appellants contend that imposition of the constructive trust violates their right to due process and trial by jury. Specifically, they complain that the trial court entered judgment on claims neither pleaded nor submitted to the jury. We have already addressed these claims as follows: (1) we found Donnelly's pleadings for equitable relief sufficient for imposition of a constructive trust and (2) we also found that appellants failed to preserve error that the existence of a fiduciary relationship was a fact question for the jury. The jury's finding of breach of fiduciary duty permits imposition of a constructive trust. *See Carr v. Weiss*, 984 S.W.2d 753, 767 (Tex.App.-Amarillo 1999, pet. denied).

Eighth, the Willises contend in one sentence, without citation to the record or to authority, that "there was no evidence, no legally sufficient evidence, no factually sufficient evidence, and no finding of any basis upon which to impose a constructive trust on the stock or real property." In the context of the Willises' issue 20, this one sentence is merely a catch-all included at the end of briefing four-and-one-half pages long. Because it is multifarious, lacking in substantive analysis, and devoid of citation to authority and the record, they have waived this eighth subissue. *See Ryan v. Abdel–Salam*, 39 S.W.3d 332,

336 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Interstate Northborough P'ship*, 8 S.W.3d at 7 n. 2; *Keever v. Finlan*, 988 S.W.2d 300, 314 (Tex.App.-Dallas 1999, pet. dism'd).

Accordingly, having addressed these eight subissues, we overrule the Willises' issue 20, Urban Retreat's issue five, and the first portion of Urban Retreat's issue six.

## B. Money Damages Available

We next address the ninth subissue, which comprises the Willises' twenty-first issue and Urban Retreat's seventh issue. Appellants contend that the trial court erred in awarding equitable relief because Donnelly failed to establish that he lacked an adequate remedy at law. In other words, appellants claim that where money damages are available, a constructive trust may not be imposed.[19]

▬ The thrust of appellants' argument is that (1) a constructive trust is an equitable remedy; (2) equitable remedies such as injunctions and specific performance require a lack of an adequate remedy at law; (3) thus, an inadequate remedy at law is a prerequisite to imposition of a constructive trust; (4) money damages are available to compensate any breach of fiduciary duty in this case; and (5) Donnelly is accordingly not entitled to a constructive trust. However, the forms of constructive trusts are "practically without limit" and may be "applied wherever necessary for the obtaining of complete justice, *although the law may also give the remedy of damages against the wrong-doer.*" *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 263 (1951) (emphasis added); *Wheeler v. Blacklands Prod. Credit Ass'n.*, 627 S.W.2d 846, 849 (Tex.App.-Fort Worth 1982, no writ); *cf.* RESTATEMENT OF RESTI-

---

19. The jury awarded $1,707,684.30 for Mike Willis's breach of fiduciary duty.

TUTION § 160 cmt. e (1937) (constructive trust appropriate for cases involving title to land or where "payment or transfer was procured by an abuse of a fiduciary or confidential relation."). The trial court was not precluded from imposing a constructive trust. Accordingly, we overrule the Willises' issue 21 and Urban Retreat's issue seven.

## C. Unclean Hands

 In the Willises' issue 22[20] and the second portion of Urban Retreat's issue six, appellants argue that Donnelly's claims for equitable relief are barred by the doctrine of unclean hands. One who seeks a constructive trust must come with clean hands regarding the issue in dispute. *See Omohundro*, 341 S.W.2d at 410; *see also Wynne v. Fischer*, 809 S.W.2d 264, 267 (Tex.App.-Dallas 1991, writ denied). It is within a trial court's sound discretion to determine whether a party has unclean hands and whether the party's alleged fraudulent actions should bar equitable relief. *Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex.App.-Corpus Christi 1994, no writ).

 Appellants contend Donnelly's hands are unclean because he breached his contract with them. Specifically, they contend he failed to bring his entire former staff to Urban Retreat, produced less revenue than promised, and attempted to establish a competing business.[21] However, breach of contract is an issue separate from breach of fiduciary duty. To bar equitable relief, a plaintiff's inequitable conduct should arise with regard to the issue in dispute. *Wynne*, 809 S.W.2d at

267. Further, a party complaining of an opponent's unclean hands " 'must show that he himself has been injured by such conduct to justify the application of the principle to the case.' " *Omohundro*, 341 S.W.2d at 410 (quoting 2 Pomeroy's Equity Jurisprudence at 99); *see Thomas*, 882 S.W.2d at 880; *see also Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894, 897 (Tex. Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.) (hairstylist claimed salon sought equity with unclean hands, but she failed to show harm). Even if we assume Donnelly breached his contract, appellants have neither argued nor shown they were harmed. For instance, they do not set forth the difference in revenue promised by Donnelly versus revenue earned, nor do they show that Urban Retreat's revenue suffered because of Donnelly's assistance in creating a competing salon.

Because (1) Donnelly's alleged unclean hands involve contract—a separate issue—and (2) appellants have not shown harm, the trial court did not abuse its discretion in disregarding appellants' argument of "unclean hands." Accordingly, we overrule issue 22 and the second portion of Urban Retreat's issue six.

## D. Laches

 In the remainder of issue six, Urban Retreat argues that Donnelly's claim for equitable relief is barred by laches. There are two essential elements of laches: "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment be-

20. The Willises fail to brief issue 22. We thus address the argument as presented in Urban Retreat's brief.

21. The Letter Agreement states that Donnelly agreed to "use his best efforts" to persuade his entire staff and clientele to transfer to Urban Retreat. The Letter Agreement also states that while employed at Urban Retreat, Donnelly may not compete in the Houston area by performing "personal care, beauty, and hair" services or owning an interest in a competing business.

cause of the delay." *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 80 (Tex.1989). Extraordinary circumstances, which would work a grave injustice, must exist before laches bars a suit filed within the limitations period. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex.1998).

 Urban Retreat argues that it has been prejudiced because memories have faded over time. However, fading memory "is one of the policy reasons behind the statute of limitations." *Wakefield v. Bevly*, 704 S.W.2d 339, 345 (Tex.App.-Corpus Christi 1985, no writ). Faded memory does not establish laches in a suit filed before the statute of limitations has expired. *Id.* The case cited by Urban Retreat, *Fazakerly v. Fazakerly*, 996 S.W.2d 260, 265 (Tex.App.-Eastland 1999, pet. denied), is distinguishable. It involved a daughter's challenge to her father's and stepmother's antenuptial agreement after expiration of the statute of limitations; 25 years after the agreement was signed; eight years after the father's death; and after the stepmother became incapacitated by Alzheimer's. In contrast, in this case, the statute of limitations did not expire, and the essential parties are alive and competent. Further, Urban Retreat has not identified its good faith but detrimental change in position due to Donnelly's delay in filing suit. *See Rogers*, 772 S.W.2d at 80. For these two reasons, we overrule Urban Retreat's assertion of laches. We overrule Urban Retreat's issue six.

### DAMAGES

In their twenty-third, twenty-fourth, and twenty-fifth issues, the Willises contend that the trial court improperly instructed the jury about the measure of damages for breach of contract and breach of fiduciary duty and improperly "stacked" the damages, which permitted a triple recovery. Urban Retreat urges these same issues in points of error eight, nine, and ten.

### A. Breach of Contract Damages

First, appellants argue that the trial court submitted the wrong measure of damages for breach of contract to the jury. The jury awarded $1,707,684.30 in damages for unpaid salary and for stock value using the equation found in the Letter Agreement's "Other Matters Relating to Shares." We agree that the jury considered the wrong measure of damages for the stock value, although we disagree with the measure of damages urged by appellants.

 "Damages must be measured by a legal standard, and that standard must be used to guide the fact finder in determining what sum would compensate the injured party." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The proper measure of damages is a question of law. *Id.* In the jury charge, the trial court instructed the jury to measure the value of Donnelly's shares under a provision in the Letter Agreement entitled "Other Matters Relating to Shares." The Letter Agreement contains two provisions about share valuation, one under the heading "Termination" and the other under "Other Matters Relating to Shares." The "Termination" provision requires Donnelly to sell his shares back if his employment terminates after 12 months.[22] Under the

---

22. "After twelve (12) months of employment, if Mr. Donnelly is terminated, Mr. Donnelly would likewise be required to sell his shares of the Urban Retreat and Willis/Hite to those companies and would receive book value of such shares or the value of such shares as determined by multiplying two times prior year's earnings ..., whichever is greater. 'Book Value' is defined as the assets minus liabilities...."

"Termination" provision, share value equals the greater of (a) assets minus liabilities or (b) two times previous year's earnings. Using this provision, Donnelly's shares are valueless because Urban Retreat's liabilities and costs have always outstripped its tangible assets and revenue. Appellants urge that this provision should be used as the measure of damages because Donnelly was terminated.

In contrast, the shares have value if the provision in "Other Matters Relating to Shares" applies. Under that provision, share value equals the market value of the real estate plus the previous 12 months' gross revenue.[23] Thus, Urban Retreat's debts would not be considered. However, the plain language of the Letter Agreement reveals that "Other Matters Related to Shares" is activated only in two situations: (1) when a shareholder exercises a right of first refusal and (2) in an exchange of stock if multiple "Urban Retreat companies" combine.

 The parties simply disagree regarding which of the two provisions should be used to value the shares. However, neither of the two is a liquidated damages provision applicable in the event of breach of contract. *See Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 188 n. 13 (Tex.App.-Austin 1998, pet. denied). Although parties may stipulate the amount of damages to be recovered in the event of breach of contract, "[s]uch an agreement ... must be expressed, and in the absence of an express agreement for liquidated damages the court will not make one for the parties." *Id.; see also Newsom v. State*, 922 S.W.2d 274, 281 (Tex.App.-Austin 1996, writ denied) ("Damages become 'liquidated' when the *parties* have agreed to the amount at issue."). In the absence

of an express agreement for liquidated damages, courts apply a common-law measure of damages for breach of contract. *See General Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 599 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

 Further, appellants cannot take advantage of provisions favorable to them in the very contract they breached. *See Baker Marine Corp. v. Weatherby Eng'g Co.*, 710 S.W.2d 690, 696 (Tex.App.-Corpus Christi 1986, no writ). One who has broken a contract cannot thereafter enforce the remaining terms. *See Joseph v. PPG Indus., Inc.*, 674 S.W.2d 862, 867 (Tex.App.-Austin 1984, writ ref'd n.r.e.); *accord II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex.App.-San Antonio 2001, pet. denied); *Interceramic, Inc. v. S. Orient R.R. Co.*, 999 S.W.2d 920, 924 (Tex.App.-Texarkana 1999, pet. denied). Having breached the contract, appellants cannot then enforce the Termination provision as though it were a liquidated damages clause or the common-law measure of damages, which it is not.

 In a breach of contract action for failure to transfer shares of a closely held corporation, "[t]he proper measure of damages is the fair market value of the stock...." *See Bowers Steel, Inc. v. DeBrooke*, 557 S.W.2d 369, 373 (Tex.Civ.App.-San Antonio 1977, no writ) (employee was promised 20% of stock in closely held corporation, but never received it); *see also Miga v. Jensen*, 96 S.W.3d 207, 215 (Tex. 2003) (in breach of agreement to purchase securities, damages are the difference between the contract price and the fair market value of the asset). Market value of

---

23. "Book Value of Owners' Equity = Real Estate Appraised at Market Value Plus Previous Twelve (12) Months Gross Revenues."

closed-corporate stock is what a willing purchaser would pay to a willing seller under no compulsion to sell. *InterFirst Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882, 889 (Tex.App.-Texarkana 1987, no writ); *accord Fisher v. Yates,* 953 S.W.2d 370, 378 (Tex.App.-Texarkana 1997), *writ denied per curiam,* 988 S.W.2d 730 (Tex. 1998); *see also City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex. 2001) (measure of damages in condemnation). Book value "is entitled to little, if any, weight in determining the value of a corporation's stock, and many other factors must be taken into consideration." *Bendalin v. Delgado,* 406 S.W.2d 897, 900–01 (Tex.1966); accord *Pabich v. Kellar,* 71 S.W.3d 500, 509 (Tex.App.-Fort Worth 2002, pet. denied); *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.,* 962 S.W.2d 676 (Tex.App.-Waco 1998, no pet.). When too few stock sales exist to establish a market price, other factors to assess fair market value include:

(a) The nature of the business and the history of the enterprise from its inception.

(b) The economic outlook in general and the condition and outlook of the specific industry in particular.

(c) The book value of the stock and the financial condition of the business.

(d) The earning capacity of the company.

(e) The dividend paying capacity.

(f) Whether or not the enterprise has good will or other intangible values.[24]

(g) Sales of stock and the size of the block of the stock to be valued.

(h) The market price of stocks of corporations engaged in the same or similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.

*InterFirst Bank Dallas,* 739 S.W.2d at 892 (citing Rev. Rul. 59–60, 1951–1 C.B. 237). If there is no evidence of fair market value, the value of stock in a closely held corporation is predicated upon the market value of the assets of the company after deducting its liabilities. *See Williams v. Gaines,* 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied) (op. on reh'g).

 Regardless, the calculation should reflect the value at the time of injury. *See Bendalin,* 406 S.W.2d at 901; *Pabich,* 71 S.W.3d at 509; *Williams,* 943 S.W.2d at 193–94; *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 848 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (employee entitled to stock's value at time of his termination from employment); *Bowers Steel, Inc.,* 557 S.W.2d at 373 (stock promised to employee as compensation was valued at time of termination); *see also Miga,* 96 S.W.3d at 214 (explaining long-standing rule in Texas that contract damages are measured at the time of breach). In this case, appellants clearly repudiated the Letter Agreement in November 1994, which is coincidentally the date of Donnelly's termination. Donnelly is thus entitled to damages because of appellants' wrongful breach of the Letter Agreement, not because he was terminated in accordance with the Termination provision.

 We hold that the correct measure of damages is the fair market value of the stock in URB and in WHE at the time of Donnelly's termination in November 1994. Accordingly, the trial court erred in submitting the wrong measure of damages.

---

**24.** Per the Letter Agreement, WHE owns "all rights to the name 'The Urban Retreat.'" WHE's ownership of the name is confirmed in a "URH/URC Contract." The evidence does not reveal whether WHE had liabilities or other assets when Donnelly's employment terminated.

When a trial court erroneously instructs the jury on the measure of damages, the submission is reversible error. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex.1997). When a defective damages question is submitted, the proper remedy is to remand for new trial. *See Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973). The rules of appellate procedure do not permit a new trial solely on unliquidated damages if liability is contested. TEX.R.APP. P. 44.1(b). Accordingly, we reverse and remand for a new trial on Donnelly's cause of action for breach of contract.[25]

## B. Breach of Fiduciary Duty Damages

In the Willises' issue 24 and Urban Retreat's issue nine, appellants contend that the trial court erred in omitting a measure of damages in the breach of fiduciary duty question. In Question 25, the court asked the jury, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dan Donnelly for his damages, if any, that were proximately caused by such conduct [Mike Willis's breach of fiduciary duty]?" The court, however, did not instruct the jury on what items to consider in assessing damages.

■ "[W]hen the trial court has erroneously failed to include instructions on the proper measure of damages, it is the complaining party's burden both to object to the charge and to tender such instructions in substantially correct form." *Tex. Commerce Bank v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 75 (Tex.App.-Corpus Christi 1993, writ denied); *see* TEX.R. CIV. P. 278; *accord R & R Contractors v. Torres*, 88 S.W.3d 685, 695 (Tex.App.-Corpus Christi 2002, no pet.); *Campbell v. C.D. Payne & Geldermann Sec., Inc.*, 894 S.W.2d 411, 420 (Tex.App.-Amarillo 1995, writ denied); *Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 565 (Tex.App.-Corpus Christi 1994, writ denied).[26]

■ Although appellants objected, they failed to tender an instruction in substantially correct form. Their proposed measure of damages was the "Termination" provision from the Letter Agreement, which would limit damages for breach of fiduciary duty to stock value calculated at the greater of (1) assets minus liabilities or (2) two times the prior year's earnings. However, Donnelly presented evidence that Willis's purchase of the URB realty and his characterization of capital contributions as loans were breaches of fiduciary duty. Appellants' proposed measure of damages would exclude consideration of realty value and the amount of money mischaracterized as loans. Thus,

---

**25.** Under Rule 44.1(b), we remand the portion of the matter in controversy that is affected by the error and that is fairly separable. Accordingly, we remand Question 5 (the breach of contract question), Question 6 (whether the failure to comply was excused), Question 8 (the percentage of URB stock to which Donnelly was entitled), Question 9 (the percentage of WHE stock to which Donnelly was entitled), Question 10 (ratification), and Question 11 (damages incurred for breach of contract).

**26.** When a measure of damages is omitted, the complaining party must request the correct measure. TEX.R. CIV. P. 278; *see Fairfield Estates, L.P. v. Griffin*, 986 S.W.2d 719, 724 (Tex.App.-Eastland 1999, no pet.). When an incorrect measure is submitted, *i.e.*, a defective submission, the complaining party need only object. *See Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 613–14 (Tex.1992); *R & R Contractors*, 88 S.W.3d at 695; *see also Operation Rescue–Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 937 S.W.2d 60, 69 (Tex.App.-Houston [14th Dist.] 1997), *aff'd as modified*, 975 S.W.2d 546 (Tex.1998).

assuming that Question 25 was deficient,[27] appellants have waived error by failing to tender an instruction on the correct measure of damages. *See Miller v. Kendall,* 804 S.W.2d 933, 942 (Tex.App.-Houston [1st Dist.] 1990, no writ) (complaining party waived error by tendering instruction with incorrect measure of damages). Accordingly, we overrule the Willises' issue 24 and Urban Retreat's issue nine.

### C. Stacking

In the Willises' twenty-fifth issue and Urban Retreat's tenth issue, appellants contend that the trial court erroneously stacked the damages, permitting a triple recovery. First, they contend that the jury awarded the same amount of money for breach of contract and breach of fiduciary duty, which constitute a single injury. They then contend that the trial court tripled the recovery by imposing a constructive trust.

■■■■■ "A double recovery exists when a plaintiff obtains more than one recovery for the same injury." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184 (Tex.1998). Here, the jury awarded the same amount of money for both breach of contract and breach of fiduciary duty. Appellants contend that these awards, along with Donnelly's jury arguments, prove that he has suffered but one injury. However, we have reversed and remanded the breach of contract claim. Thus, there is no double recovery of identical amounts for both causes of action. Additionally, when a plaintiff pleads alternate theories of liability, a judgment awarding damages on more than one theory may stand if the theories of liability arise from separate and distinct injuries and separate and distinct damage

findings are entered on each theory of liability. *See Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex. 1987). There is evidence supporting damages for two "separate and distinct" causes of action in this case: (1) unpaid salary and stock value for breach of the Letter Agreement; and (2) real estate value and capital contributions listed as loans for breach of fiduciary duty. Real estate value and "loans" should not be considered in determining breach of contract damages.

■■■■■ Lastly, appellants argue that the constructive trust triples Donnelly's recovery. Donnelly concedes that the constructive trust duplicates the money judgment and seeks remand for an election of remedies. "A party who seeks redress under two or more theories of recovery for a single wrong must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment." *Star Houston, Inc. v. Shevack,* 886 S.W.2d 414, 422 (Tex.App.-Houston [1st Dist.] 1994), *writ denied per curiam,* 907 S.W.2d 452 (Tex.1995). If the prevailing party fails to elect a remedy, the trial court should render a judgment affording the greater recovery. *Pitman v. Lightfoot,* 937 S.W.2d 496, 533 (Tex.App.-San Antonio 1996, writ denied). If the trial court fails to do so, generally, we will reform the judgment to effect such an election. *See id.*

■■■■■ However, appellate courts sometimes remand a case for an election of remedies. *See, e.g., Waite Hill Servs.,* 959 S.W.2d at 185; *Gunn Infiniti, Inc. v. O'Byrne,* 18 S.W.3d 715, 718 (Tex.App.-San Antonio 2000, no pet.); *Jim Walter Homes, Inc. v. Samuel,* 701 S.W.2d 351, 354 (Tex.App.-Beaumont 1986, no writ). We remand the constructive trust in this

**27.** *But see Rowe v. Rowe,* 887 S.W.2d 191, 199 (Tex.App.-Fort Worth 1994, writ denied) (almost identical question held to be proper under Texas law when challenged for improper measure of damages).

case for two reasons. First, the portion of the constructive trust imposed upon 50% of URB stock and 10% of WHE stock duplicates recovery for breach of contract, which we have reversed and remanded. Thus, the constructive trust on the URB and WHE stock is also reversed and remanded. Second, we are unable to determine which remedy for breach of fiduciary duty (the money damages or the constructive trust on the realty) provides a greater recovery. Accordingly, we remand for an election of remedies for breach of fiduciary duty.

In summary, we overrule the Willises' issue 25 and Urban Retreat's issue ten to the extent appellants contend fiduciary duty damages are the same as contract damages. We partially sustain the issues as follows. First, we reverse and remand the constructive trust imposed on Urban Retreat stock because it duplicates damages for breach of contract, which we have reversed and remanded for a new trial. Second, we remand the constructive trust imposed on the realty for an election of remedies because it duplicates money damages awarded for breach of fiduciary duty.

## ATTORNEY'S FEES

### A. Fees Awarded to Donnelly

In the Willises' issue 26 and a portion of Urban Retreat's issue four, appellants contend that Donnelly was not entitled to attorney's fees. In the Willises' issue 27 and the remainder of Urban Retreat's issue four, they argue that Donnelly failed to properly present his claim, timely disclose expert opinions regarding the fees, and offer evidence about a reasonable fee.

■ Donnelly was awarded attorney's fees in conjunction with his breach of contract claim. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997) (permitting attorney's fees for a "valid" claim on a contract). Because we have reversed and remanded the contract claim, Donnelly has no longer proved a "valid" contract claim. See Wright Way Const. Co., Inc. v. Harlingen Mall Co., 799 S.W.2d 415, 425 (Tex. App.-Corpus Christi 1990, writ denied); Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc., 796 S.W.2d 763, 772 (Tex. App.-Dallas 1990, writ denied) (attorney's fees not recoverable for claims on which a party does not prevail). Additionally, Donnelly may not recover attorney's fees for his breach of fiduciary duty claim. See Maeberry v. Gayle, 955 S.W.2d 875, 881 (Tex.App.-Corpus Christi 1997, no pet.); Spangler v. Jones, 861 S.W.2d 392, 397 (Tex.App.-Dallas 1993, writ denied). Accordingly, we sustain the Willises' issue 26 and the first portion of Urban Retreat's issue four. We reverse and remand the attorney's fees issue. Because of this disposition, we need not address issue 27 or the remainder of Urban Retreat's issue four.

### B. Fees Awarded to Mike Willis

In his cross-appeal, Donnelly contends in two issues that the trial court erred in awarding Mike Willis $400,000 in attorney's fees for a $26,982.58 defaulted promissory note. Donnelly complains that the attorney's fees were not segregated and thus include the costs of defending his suit against Urban Retreat and the Willises. "One of the thorniest and most frequently litigated issues involved in proof of attorney's fees concerns segregation of recoverable fees." Scott A. Brister, Proof of Attorney's Fees in Texas, 24 ST. MARY'S L.J. 313, 342 (1993). We agree that the attorney's fees awarded to Mike Willis were not properly segregated, and we reverse and remand the issue.

In his first cross-issue, Donnelly argues the trial court erred in overruling his ob-

jections to Question 4, in which the trial court asked the jury to determine Willis's reasonable attorney's fees "in this case."[28] We interpret Donnelly's briefing to contend that the trial court erred in awarding Mike Willis fees for *all* the legal work performed in the lawsuit, including defense of Donnelly's counterclaims involving the Letter Agreement and Urban Retreat, and including fees incurred by Francie and Urban Retreat (who were not parties to the promissory note). In other words, Donnelly argues that Willis failed to segregate the attorney's fees related to his successful recovery on the promissory note, which was the sole basis for his entitlement to an award of attorney's fees. We agree.

■■■■ We review such a claim of jury charge error for abuse of discretion. *Tex. Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *KPH Consolidation, Inc. v. Romero*, 102 S.W.3d 135, 156 (Tex. App.-Houston [14th Dist.], 2003, no pet. h.). The trial court has broad discretion in submitting the jury charge; it abuses its discretion only when it acts unreasonably or arbitrarily, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). We may not reverse for jury charge error unless the error, when viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause rendition of an improper judgment. TEX.R.APP. P. 44.1(a)(1). Our analysis must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986).

Absent a showing of an abuse of discretion, the award or failure to award fees will not be disturbed on appeal. *See, e.g., Houston Lighting & Power Co. v. Dickinson Indep. Sch. Dist.*, 641 S.W.2d 302, 311 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Fowler v. Stone*, 600 S.W.2d 351, 353 (Tex. Civ.App.-Houston [14th Dist.] 1980, no writ).

■■■■ Whether attorney's fees are authorized in a particular case is a question of law to be determined by the court. *Holland v. Wal–Mart Stores*, 1 S.W.3d 91, 94 (Tex.1999); *Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 708 (Tex.App.-El Paso 1993, no writ). The Texas Supreme Court has consistently held that "a prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties." *Holland*, 1 S.W.3d at 95. A party may not recover attorney's fees for claims on which the party did not prevail. *Budget Rent–A–Car Sys., Inc.*, 796 S.W.2d at 772.

■■■■ As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *Lesikar v. Rappeport*, 33 S.W.3d 282, 317 (Tex.App.-Texarkana 2000, pet. denied). Specifically, when a lawsuit involves multiple claims or multiple parties, the proponent has a duty to segregate non-recoverable fees from recoverable fees, and to segregate the fees owed by different parties. *Sterling*, 822 S.W.2d at 10–11. As a result, the fees incurred for successful prosecution of a breach of contract claim must be segregated from those claims in the case for which attorney's fees may not be recovered. *Id.* at 11 (remand-

---

**28.** Donnelly objected that in answering Question 4, the jury was not limited to assessing attorney's fees incurred solely by Mike Willis for only the promissory note claim. Donnelly also objected that there was no evidence segregating the fees.

ing for segregation of attorney's fees attributable to recovering policy benefits among various defendants); *Int'l Sec. Life Ins. Co. v. Finck*, 496 S.W.2d 544, 546–47 (Tex.1973) (remanding for segregation of attorney's fees incurred for fraud and deceit claims from recovery on policy claim); *Z.A.O., Inc. v. Yarbrough Drive Ctr. J.V.*, 50 S.W.3d 531, 550–51 (Tex.App.-El Paso 2001, no pet.) (remanding for segregation of attorney's fees for prosecuting trespass and nuisance claims from contract claim).

 In the absence of segregation, a trial court may refuse to award attorney's fees. *See S. Concrete Co. v. Metrotec Fin., Inc.*, 775 S.W.2d 446, 450 (Tex.App.-Dallas 1989, no writ); *Bullock v. Kehoe*, 678 S.W.2d 558, 560 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). "But when the claims 'are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims.'" *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex.1997) (quoting *Sterling*, 822 S.W.2d at 11); *accord Village Mobile Homes, Inc. v. Porter*, 716 S.W.2d 543, 552 (Tex.App.-Austin 1986, writ ref'd) (fraud, contract, DTPA, and insurance code claims arose from same set of facts). In other words, segregation of attorney's fees is not required where the services rendered relate to (1) multiple claims arising out of the same facts or transaction and (2) the prosecution or defense entails proof or denial of essentially the same facts, so as to render the attorney's fees inseparable. *See Sterling*, 822 S.W.2d at 11; *Flint & Assocs. v. Intercont'l Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied) (claim and counterclaim arose out of same transaction—the sale of pipe). The determination of the amount to be awarded as a reasonable attorney's fee is a question of fact to be determined by the trier of fact and the award, if any, must be supported by competent evidence. *Great Am. Reserve Ins. Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966).

 Originally, Mike Willis sued Dan Donnelly for the balance owing on a $31,183.70 promissory note. The loan was made between the men in 1993, several years after Urban Retreat opened. The loan proceeds were for Donnelly's personal use; he asserted affirmative defenses to recovery on the note and a usury counterclaim, the facts of which were unrelated to the business of Urban Retreat or the Letter Agreement. Donnelly stopped paying the note when he was terminated from Urban Retreat in 1994. The jury found he owed the balance of $26,982.58. Mike Willis successfully overcame affirmative defenses to the promissory note and the usury counterclaim.

Donnelly's claims for breach of the Letter Agreement, breach of fiduciary duty, fraud in the inducement, and tortious interference against Willis, Francie, WHE, and URB all involved the Urban Retreat business. Most of the copious discovery and trial evidence addressed these claims, not the promissory note. Donnelly's claims against the Willises and Urban Retreat did not involve the creation, execution, and non-payment of the promissory note. The promissory note arose from a separate transaction. Prosecution and defense of the promissory note did not require proof or denial of essentially the same facts. The only similarity of facts is that Willis and Donnelly were parties to both.

Because Mike Willis prevailed at trial to recover the balance of the promissory note, attorney's fees are authorized for prosecuting that claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). However, this statute does not au-

thorize recovery of attorney's fees for a party's *defense* of breach of contract, fraudulent inducement, tortious interference, or breach of fiduciary duty claims. *Id.* There is no authority that entitles Willis to recover attorney's fees for his defense of Donnelly's breach of the Letter Agreement, breach of fiduciary duty, tortious interference, and fraud in the inducement counterclaims.

Willis relies upon the case of *RepublicBank Dallas v. Shook*, 653 S.W.2d 278 (Tex.1983), in arguing he should be awarded attorney's fees for defending all of Donnelly's claims. He asserts that his defense of them was inseparable from prosecuting his claim against Donnelly on the promissory note. In *RepublicBank*, because the facts were so integrally related, the prevailing party suing on a promissory note was entitled to recover attorney's fees for successfully defending a usury claim and overcoming affirmative defenses to the note's collection. We agree that Willis is entitled to recover those attorney's fees incurred in defeating Donnelly's affirmative defenses to the promissory note and overcoming the usury counterclaim. However, in urging the application *RepublicBank*, Willis glaringly fails to acknowledge the existence of Donnelly's other counterclaims, *i.e.*, the claims relating to Urban Retreat and the Letter Agreement.

At trial, Willis was not seeking to recover only his attorney's fees on the promissory note and the usury counterclaim. Instead, the jury question asked: "What is a reasonable fee for the necessary service of Mike Willis's attorneys *in this case*, stated in dollars and cents?" The question failed to limit recovery only for attorney's fees Mike Willis incurred in prosecuting the note, overcoming defenses to it, and defeating Donnelly's usury counterclaim, which was the sole counterclaim inextricably related to the promissory note. *RepublicBank* is thus not support for Willis's assertion that, as a matter of law, all of Donnelly's counterclaims were so intertwined with the promissory note as to allow recovery of attorney's fees for the whole case.

Willis next argues that the expert testimony of Finis Cowan supports recovery of total attorney's fees. We have reviewed this witness's testimony. Although he testified that he considered *RepublicBank* in arriving at his opinion, this is insufficient to demonstrate that the facts surrounding Willis's recovery on the promissory note were integrally related to Donnelly's other claims against the Willises and Urban Retreat. It was Mike Willis's burden to present evidence segregating the attorney's fees and he failed to do so.

Accordingly, we sustain Donnelly's cross-issue one. Question 4 was erroneous because it did not properly limit recovery and because there was no evidence of segregated fees.[29] Because the determination of reasonable attorney's fees is a question for the trier of fact, we remand the attorney's fees issue for determination of what portion of the $400,000 in attorney's fees is attributable to the successful prosecution of Mike Willis's claim on the promissory note and defense of the usury counterclaim. *See Stewart Title*, 822 S.W.2d at 12; *Aetna Cas. & Sur. v.*

**29.** Donnelly does not assert points of error for legal or factual insufficiency of the evidence. Even if he had done so, we could not reverse and render. If a party does not properly segregate attorney's fees, it is error to completely deny recovery of attorney's fees on a contract claim, as evidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated fees. *Int'l Sec.Life Ins. Co.*, 496 S.W.2d at 546–47; *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 171 (Tex.App.-Houston [1st Dist.] 1996, no writ).

*Wild*, 944 S.W.2d 37, 41 (Tex.App.-Amarillo 1997, writ denied). The jury cannot award attorney's fees to Mike Willis for fees incurred by WHE, URB, Francie, or Willis in defending Donnelly's claims for breach of fiduciary duty, tortious interference, fraud in the inducement, and breach of the Letter Agreement. Lastly, as a result of our disposition of cross-issue one, we need not address Donnelly's second cross-issue.

### CONCLUSION

In summary, we affirm the judgment against Mike Willis for breach of fiduciary duty. However, the constructive trust awards a double recovery for breach of fiduciary duty. We therefore remand for an election of remedies between the constructive trust on the realty and the $1.7 million awarded by the jury for breach of fiduciary duty.

Next, we overrule the Willises and Urban Retreat's challenges to liability for breach of contract. We further hold that the statute of limitations for breach of contract did not accrue before August 24, 1991. However, the jury charge contained an incorrect measure of damages for breach of contract. Accordingly, we reverse and remand for a new trial on contract damages. Because we are reversing and remanding the damages issue, we also reverse and remand the portion of the constructive trust imposed on URB and WHE stock, which duplicates contract damages. As a consequence of the new trial on contract damages, we must also reverse and remand the contract liability issues, found in Questions 5, 6, 8, 9, and 10. Finally, because Donnelly is no longer a prevailing party, we reverse and remand the attorney's fees awarded to him on his breach of contract claim.

In Donnelly's cross-appeal, we hold that the trial court erred in permitting the jury to consider unsegregated attorney's fees incurred by the Willises and Urban Retreat, instead of those incurred solely by Mike Willis in prosecuting Donnelly for defaulting on a promissory note and prevailing on Donnelly's usury counterclaim.

Accordingly, we affirm the judgment for breach of fiduciary duty, remand for an election of remedies consistent with this opinion, reverse and remand all breach of contract issues, except the limitations question, reverse and remand the award of attorney's fees to Donnelly, and reverse and remand the award of attorney's fees to Mike Willis.

## SUPPLEMENTAL OPINION ON REHEARING

Michael T. Willis, Francie Willis, Willis Hite Enterprises, Inc., and Urban Retreat of Houston, Inc., have filed a motion for rehearing and motion for rehearing en banc from our opinion. While we change nothing in our opinion or disposition of the appeal, we supplement the opinion to address three issues raised in the motion for rehearing. The motion for rehearing is denied.

### RATIFICATION

In issue eight of their motion for rehearing, appellants contend ratification by Michael and Francie Willis must also conform to requirements of the statute of frauds because the Letter Agreement was subject to the statute of frauds. This issue is raised for the first time in the motion for rehearing. An assignment of error raised for the first time in a motion for rehearing is too late to be considered. *Lee v. Lee*, 47 S.W.3d 767, 799 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Originally, appellants argued in their ratification issue that a jury finding on both ratification and breach of contract was necessary as to Mike and Francie

Willis. They did not argue statute of frauds under their ratification issue.[1] The sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented. *Phifer v. Nacogdoches County Cent. Appraisal Dist.*, 45 S.W.3d 159, 166 (Tex. App.-Tyler 2000, pet. denied). Because this issue is raised for the first time in appellant's motion for rehearing, we do not address it.

### STANDING VERSUS CAPACITY

 In issue seven of their motion for rehearing, appellants contend that Donnelly lacks standing to sue for Urban Retreat's damages. Appellants confuse "capacity," which has been waived, with "standing," which we addressed in our original opinion.

 "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). In contrast, "a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* Standing is jurisdictional and cannot be waived, but capacity may be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Whether a stockholder may recover damages personally for a wrong done to the corporation is an argument about capacity—that is, whether the stockholder has legal authority. *Mackie v. Guthrie*, 78 S.W.3d 462, 465–66 (Tex.App.-Tyler 2001, pet. denied). It is improper for an appellant to couch such an argument in terms of standing. *Id.* at 466.

Further, to challenge capacity, a party must file a verified denial. *See* TEX.R. CIV. P. 93(2); *see also Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex.1988). If Rule 93 is not followed, the issue of capacity is waived on appeal. *Nootsie,* 925 S.W.2d at 662. In this case, appellants did not file a verified denial of Donnelly's capacity to recover Urban Retreat's damages.

### REMAND OF LIMITATIONS ISSUE

 In their tenth issue, appellants contend we must reverse and remand the limitations issue because we reversed and remanded breach of contract and damages questions. Texas Rule of Appellate Procedure 44.1 permits an appellate court to reverse those portions of a matter in controversy that are affected by the error. The rule prohibits a separate trial solely on unliquidated damages if liability is contested. TEX.R.APP. P. 44.1(b). In this case, the trial court erroneously submitted the wrong measure of damages for breach of contract. Because liability was contested, we reversed and remanded not only the damages question, but also questions about breach of contract, ratification, waiver, and percentages of ownership in the corporations. We did not reverse and remand the contract statute of limitations issue.

 Accrual of the statute of limitations is a question of law. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Waxler v. Household Credit Servs., Inc.,* 106 S.W.3d 277, 279 (Tex. App.-Dallas 2003, no pet.). Appellants assigned error to the jury's rejection of the statute of limitations, contending that suit was barred as a matter of law. We concluded that the cause of action for breach

---

1. A brief survey of the law after the motion for rehearing was filed uncovered divergence in whether jurisdictions require ratification to conform with the statute of frauds. The case law cited in the motion for rehearing was not urged in the appellate briefing, further demonstrating that the issue is newly raised in the motion for rehearing.

of contract accrued within four years of suit. On remand, questions of law answered by an appellate court are considered law of the case. *See Briscoe v. Goodmark, Corp.,* 102 S.W.3d 714, 716 (Tex. 2003). As there is no issue to relitigate upon remand, we decline to reverse and remand the limitations issue.

Finding it unnecessary to write regarding the remaining seven points in their motion, we deny appellant's motion for rehearing.