**D.E.W., INC., Appellant,**

v.

**DEPCO FORMS, INC., Appellee.**

**No. 04–91–00185–CV.**

Court of Appeals of Texas,
San Antonio.

Jan. 31, 1992.

Rehearing Denied March 20, 1992.

Carl Payne Tobey, Jr.; and Andy Douglas, Douglas & Elms, Inc., San Antonio, for appellant.

Malinda A. Gaul, Law Offices of Kosub & Gaul, San Antonio, for appellee.

Before REEVES, C.J., and PEEPLES and GARCIA, JJ.

## OPINION

REEVES, Chief Justice.

This appeal arises out of a dispute between D.E.W., Inc. (DEW), a general contractor, and Depco Forms, Inc. (DEPCO), one of its sub-contractors. Prior to completion of the project, DEW terminated the contract it had with DEPCO and completed the work itself. A jury found that both parties had materially breached the contract, that Depco had been damaged in the amount of $66,500, and that DEW had incurred zero damages.

### Facts

In November 1984, the parties entered into a written construction contract regarding an addition to a building located on Kelly Air Force Base and owned by the US Army Corps of Engineers.[1] The contract provided, in pertinent part, as follows:

> If the Sub–Contractor ... shall be unreasonably slow in the prosecution of his work, or if he should persistently or repeatedly refuse to furnish enough skilled workmen or proper materials, or if he shall fail to make prompt payment for materials or labor, ... then the contractor, may without prejudice to any other remedy he may have, terminate this contract and take over the job and with subcontractors tools ... finish the job.... the sub-contractor shall not be entitled to receive any further payment until work is finished.... If the unpaid balance of the contract shall exceed the cost of finishing the work ... such excess shall be paid to the sub-contractor. If such cost shall exceed the unpaid balance of the contract, the sub-contractor shall pay the excess to the contractor. In case of dispute between contracting parties, Contractor's decision shall at all times be final.

> \* \* \* \* \* \*

> Due to the intricate nature of the forming operations and the critical time schedule, sub-contractor shall furnish sufficient labor, material, and field supervision so as not to delay the progress of the job.

---

1. DEPCO has not challenged the accuracy of DEW's rendition of the facts. We will therefore accept them as correct with minor exceptions. TEX.R.APP.P. 74(f).

On or about February 15, 1985, DEPCO was notified to begin work on February 25, 1985. On that date, DEPCO made some partial deliveries of material to the jobsite but the only work performed was the unloading of the material. DEPCO did not commence work until February 28, 1985.

During its course of performance DEPCO was often short of the material needed to complete its work. On March 11, 1985 the foreman reported in DEPCO's daily log that he needed more material. Two of the items that were requested were 130 four-by-fours for forming and 650 shores. The quantities requested were in addition to those already delivered. Some of lumber was not delivered until March 19, eight days after the request. On April 11, the foreman made another notation that he needed more material. Also delivered on March 19, were 400 shores. It was not until April 4, 1985 that a full 650 shores were delivered.

The material was not always in acceptable condition. Many of the items brought to the site had been previously used. Some of the four-by-fours used for shoring were split and the pans used for the concrete pouring had holes in them. There is testimony in the record that "30 to 50 percent of the forms used were so bent out of shape that they couldn't get a true line and keep the concrete in place." The owner objected to the use of the bent forms on the project. There were conversations between the parties regarding the problems that DEPCO was having in obtaining material and completing the project.

Between February 28 and April 11, DEPCO manned the job for only 10 manhours per day, when what was required was an average of 40–48 manhours per day. There were many days that the crew either did not report for work, was undermanned, or left the jobsite early. On March 11 the crew worked for only four and a half hours. On the 12th there was no work and on the 13th there were only five people on the site working about five hours while the foreman only worked for approximately three and three-fourths hours. DEPCO's foreman was not present at the jobsite at all times during the progress of the job. On the 11th, 12th and 13th he left the site and went to work on another project. On the 14th there was no work.

Testimony in the record states that for the job to be completed on time, DEPCO needed to complete the first portion of its work within nine days. Over 30 days elapsed before DEPCO completed the work. DEPCO's failure to have the concrete pans and the necessary forms in place on time had the effect of delaying the further scheduling of construction, electrical and mechanical work to be performed by other sub-contractors. At the end of March 1985, the owner and DEW determined that the project was a little more than 12–15 days behind schedule due to DEPCO's slow progress. The owner and DEW ascertained that if DEPCO were left to continue at its current pace the job would fall approximately eight months behind schedule with over $300,000 in liquidated damages in the form of fines and penalties accumulating against DEW. The owner threatened to take action to terminate DEPCO's contract if action were not taken to get the project back on schedule.

Subsequently, DEW terminated DEPCO's contract and took over the work. DEW completed the job with an average crew size performing 68 manhours per day. The completion of DEPCO's work was accomplished by DEW at a cost that exceeded the unpaid amount of the subcontract.

### Points of Error

■ DEW asserts that the trial court erred in the following:[2]

I. Excluding testimony of appellant's witnesses regarding attorneys' fees and litigation expenses;[3]

---

**2.** Although DEW has presented eight points of error for our review, we find that only the following points are necessary for determination of this appeal.

**3.** In its first point, the general contractor urges that the trial court erred in excluding the factual testimony of three witnesses on damages arising from litigation expenses. A review of the record reveals that DEW failed to preserve any

II. Entry of judgment of no damages against DEPCO, upon the jury's findings that DEW suffered no damages, because the jury's finding was against the great weight and preponderance of the evidence;

III. Entry of judgment of damages against DEW, upon the jury's finding that both DEW and DEPCO had breached the contract, constituted reversible error because DEPCO had no cause of action in contract as a consequence of DEPCO's material breach of a preceding, dependent obligation, or in the alternative any breach by DEW was excused.

### The Doctrine of Mutually Dependent Obligations

■ The most important element in determining the liability of one party to a bilateral contract when the other party has failed to perform is the order of time of the performance as fixed by the contract. In Texas, the general rule is that reciprocal promises in a contract, absent intentions to the contrary, are presumed to be mutually dependent and the breach of one will excuse the performance of the other. *Dallas Market Center v. The Swing, Inc.*, 775 S.W.2d 838, 842 (Tex.App.—Dallas 1989, no writ); *Morgan v. Singley*, 560 S.W.2d 746, 749 (Tex.App.—Texarkana 1977, no writ). Furthermore, a party who is in default or breach cannot maintain a suit for breach of a contract. *Joseph v. PPG Indust. Inc.*, 674 S.W.2d 862, 867 (Tex.App.—Austin 1984, writ ref'd. n.r.e.); *Gulf Pipe Line Co. v. Nearen*, 135 Tex. 50, 138 S.W.2d 1065, 1068 (Tex.Comm'n App.1940, opinion adopted).

■ Whether mutual promises are independent or dependent must be determined by the parties intent as evidenced by the language of the contract. In case of doubt, the court will presume that such promises are dependent rather than independent, since such construction ordinarily prevents one party from having benefit of his contract without performing his own

obligation. *Nutt v. Members Mut. Ins. Co.*, 474 S.W.2d 575, 577–78 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.). A dependent promise is one which goes to the entire consideration of a contract. It is a promise that is conditional upon the prior performance by the other party. *See Greenstein v. Simpson*, 660 S.W.2d 155, 160 (Tex.App.—Waco 1983, writ ref'd n.r.e.).

■ We also note that there is a specific statement that time is of the essence. In such an instance, performance at or within the time specified is essential to one's right to require performance by the other party. *McKnight v. Renfro*, 371 S.W.2d 740, 745 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.).

### The Material Breach

■ In *Austin Paving Co. v. Cimarron Constr., Inc.*, 511 S.W.2d 417, 420 (Civ. App.—Austin 1974, no writ), the court held that the doctrine of mutual dependency of obligations provides a general contractor with the right to terminate progress payments once a subcontractor fails to perform. In the instant case the liability of DEW has been precluded because DEPCO's sole cause of action is based upon an allegation of wrongful termination. We find that it is legally impossible for both parties, DEW, the general contractor and DEPCO, the subcontractor to be liable under the facts and circumstances of this case. In reaching this conclusion we have examined the contract terms, the pleadings and the legal concepts concerning mutual dependency of obligations. The question presented is whether there was a breach by DEW and if so was that breach excusable. The jury found that DEPCO breached a material term of the contract, hence a material breach occurred. For this reason, we find that DEPCO was precluded from bringing an action for wrongful termination due to its own breach of the preceding dependent obligation of timely performance.

error for our review, thus it is waived. TEX. R.APP.PROC. 52(b); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 827 (Tex.App.—Austin 1990,

writ den'd.). DEW has submitted a reply brief in which it is conceded that this first point has been waived.

## Standard of Review

 DEW presented testimonial and documentary evidence to support its claim of damages. Beverly Shipley, the C.P.A. for DEW testified to the damages alleged by DEW. Her testimony was based upon her review of the cost detail report for the job, certified payroll records submitted by DEPCO, a time sheet from a DEW employee who also worked on the project and a summary of labor costs on the building that were incurred by DEW after the termination of DEPCO. The jury found that DEPCO had materially breached the contract, yet it failed to award any damages to DEW.

 In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

We conclude that the finding that DEW suffered no damages is against the great weight and preponderance of the evidence. The judgment of the trial court is reversed in part. Judgment is rendered in favor of DEW. This cause is remanded to the trial court for a determination on the issue of damages.