Appellant=s Motion for Rehearing Granted; Appellee=s Motion for
Rehearing Overruled; Memorandum Opinion of August 18, 2005, Withdrawn; Reversed
and Rendered and Memorandum Opinion on Rehearing filed October 20, 2005









 

Appellant=s
Motion for Rehearing Granted; Appellee=s
Motion for Rehearing Overruled; Memorandum Opinion of August 18, 2005,
Withdrawn; Reversed and Rendered and Memorandum Opinion on Rehearing filed
October 20, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00238-CV

____________

 

ROBERT HOOKER, Appellant

 

V.

 

PETER NGUYEN,
D/B/A CPN CONSTRUCTION COMPANY, Appellee

 



 

On Appeal from the County
Court at Law Number One

Harris County, Texas

Trial Court Cause No. 764,887

 



 

M E M O R A N D U M   O P I N I O N   O N   R E H E A R I N G

Robert Hooker appeals from a judgment
entered against him in favor of appellee Peter Nguyen, ordering Hooker to pay
Nguyen approximately $250,000 in damages and attorney=s fees.  Hooker raises thirty-four issues in which he
claims, inter alia, that the evidence was legally and factually
insufficient to support portions of the verdict; that Nguyen improperly
conflates breach of contract and fraud claims; and that the trial court erred
in submitting questions on fraud to the jury. 
We withdraw our memorandum opinion issued August 18, 2005, issue this
memorandum opinion on rehearing, and reverse and render.








Background

The facts giving rise to this difficult
and convoluted case began in the fall of 2000, when Hooker and his partner,
Brian Treusdell, contracted with Nguyen=s company, CPN
Construction, for Nguyen to perform the construction build-out work on a
salon.  The salon, Alex Burton Studios,
was to be owned by Hooker & Treusdell, Inc. and would consist of multiple
suites or rooms to be rented to various stylists.  According to Hooker, the written contract
between the parties consists of four documents: a bid proposal from Nguyen
dated September 28, 2000; a contract agreement also dated September 28, 2000; a
written agreement dated January 18, 2001; and the plans for the salon.  Nguyen claims that the contract consists of a
Bid Specifications Update dated August 28, 2000, the September 28  agreement, and the salon plans.  Both parties agree that the contract
stipulated that Nguyen would be paid $305,159.20 for his work.  

Nguyen previously had completed
construction projects for Hooker on two of his other properties; Hooker
described his past experiences with Nguyen as Apositive.@  In mid-October, however, problems began to
develop.  Hooker first notified Nguyen in
writing of problems with the construction, specifically, its lack of progress,
on October 15, 2000. According to Hooker, Nguyen had failed to begin work
promptly on the salon.  No completion
date appears in any of the documents claimed by the parties to represent a
contract.  At trial, Nguyen claimed that
the original deadline had been February 4, 2001.  By contrast, Hooker testified that he had
wanted the construction completed by the time he began paying rent.  To support his claim, he points to a letter
to Nguyen dated November 30, 2000, in which Hooker states that Athe original
deadline was December 1st.@








Exactly when Hooker and Treusdell
began paying rent is one of the central disputes of this case.  Hooker and Treusdell took possession of the
property in July of 2000 but were not obligated to begin making monthly rent
payments of $14,056.17 until December 1, 2000. 
Pursuant to the agreement reached between Hooker & Treusdell, Inc.
and the landlord, Hooker & Treusdell received $100,000 ($10/square foot)
cash up-front and approximately $10,000 per month for five months in rent
abatement.  This type of agreement, known
in the retail leasing arena as a tenant improvement allowance, helps tenants
offset the costs of permanent improvements to landlords= property.  As a result, Hooker & Treusdell, Inc.
paid only approximately $3700 per month in rent for five months from December
2000 until April 2001.  Hooker testified
that the majority of the $3700 was common-area maintenance fees, also known as ACAM,@ for the shopping
center in which Alex Burton Studios is located. 
In both the October and November letters, however, Hooker told Nguyen
that he and Treusdell would have to begin paying $14,159.20 in rent beginning
December 1, 2000.

As previously mentioned, Hooker sent the
October 15 and November 30 letters to memorialize in writing the ongoing
problems with the construction.  Aside
from the delay in the job=s overall progress, the brief October
letter also specifically discussed the progress of the underground plumbing
work.  In the November letter, however,
Hooker outlined more specifically his concerns regarding the job, listing
twelve items as Aleft to be completed.@  Included in this list were the sprinkler
system, Aa lot of
Electrical [SIC] work,@ HVAC installation, plumbing, installation
of doors and molding, painting, and the work on the drop ceiling. 

On January 18, 2001, Hooker, Treusdell,
and Nguyen met at a local Starbuck=s to discuss the
problems with the job.  At that meeting,
the parties signed a document entitled AAlex Burton
Studios Construction Issues.@  The document listed various tasks to be
completed; next to each task was a blank that was filled in with, presumably,
the date the task was to be completed. 
At the bottom was the following statement (italicized portions were
written in by hand):

I, Peter Nguyen will have
the entire project completed by 02/04/01.  If the project is not completed and Alex
Burton Studios cannot open for business on this date, a fine of $$5000 [SIC]
shall be imposed by Hooker & Treusdell Inc. on CPN Construction.     

 








According to Hooker, Nguyen failed to
comply with the January agreement and did not have the salon completed by
February 4, 2001.  On February 11, Hooker
sent Nguyen a letter terminating their contract.  On February 12, however, Hooker=s lawyer sent
Nguyen a letter informing Nguyen that he was Ain substantial
breach@ of the agreement;
the letter also listed Asignificant deficiencies@ in Nguyen=s work.  Nguyen and Hooker later went over this Apunch-out list,@ crossing out
items and making other modifications to clarify what needed to be done to
complete the salon.

On March 12, 2001, Nguyen sent Hooker a
letter stating that he had finished the punch-out list eighteen days prior and
that he was owed the remainder of the money on the contract.  Nguyen stated that the amount he was owed was
greater than ten percent of the original contract price.  Hooker=s attorney
responded the following day, stating that lien waivers from all subcontractors
were needed before the final contract amount would be paid.  Nguyen obtained lien waivers from all
subcontractors, but the final amount was never paid.

Aside from the job=s slow progress,
appellant claims that over the course of the job, Nguyen, among other things:
improperly installed the sheetrock on the inside walls of the salon and that
Nguyen=s attempt to fix
the problem resulted in crown molding having to be installed on all of the
inside walls; painted the ceiling grid for the drop ceiling, resulting in a Asticky@ grid that breaks
the ceiling tiles; installed 200,000 btu electric water heaters instead of the
400,000 btu heaters as required by the contract; installed 10-ton instead of
12-ton rooftop air conditioning units, resulting in reduced cooling capacity;
and performed poor plumbing work, resulting in a poorly-ventilated hot water
heater room and a smell of gas in the building. 
Hooker sold the salon in July of 2002. 
The new owners assigned to Hooker their right to recovery against Nguyen
for construction defects that included the plumbing and
heating/ventilation/air-conditioning problems.








Nguyen filed suit in county court against
Hooker and Treusdell in 2002 to recover the outstanding $44,159.20 that he
claimed was still owed him under the contract. 
Nguyen alleged several causes of action, including breach of contract,
fraud, and failure to make prompt payment under the Texas Property Code.  Hooker and Treusdell counter-claimed against
Nguyen, alleging breach of contract and Texas Deceptive Trade Practices Act (ADTPA@) violations.  Their DTPA cause of action, however, was
dismissed based on the statute of limitations. 
Nguyen never answered the counterclaim based on breach of contract.

The case was tried to a jury in the fall
of 2003.  Nguyen non-suited Treusdell in
the middle of trial.[1]  After four days of testimony and arguments,
the jury found that Hooker failed to comply with his agreement with Nguyen;
that Hooker=s failure to comply with the agreement was
not excused; that Hooker committed fraud against Nguyen; that the harm to
Nguyen resulted from Hooker=s fraud; that
Hooker made a negligent misrepresentation on which Nguyen relied; that Hooker
failed to make prompt payment to Nguyen; and that his failure to make prompt
payment was not excused.  The jury
awarded Nguyen $44,159.20 to compensate him for Hooker=s failure to
comply with the agreement; $101,666.67 for Nguyen=s damages
resulting from Hooker=s fraud; $44,159.20 for loss of value and
$101,666.67 for monetary loss on Nguyen=s negligent
misrepresentation claim; $72,672.56 for Nguyen=s attorney=s fees; and
$100,000 for exemplary damages for Hooker=s fraud.

Contradictorily, the jury found that
Nguyen failed to comply with the agreement; that Nguyen=s failure to
comply with the warranty was a producing cause of damages to Hooker; that
Nguyen did not substantially perform his obligations under the contract; and
that $58,949.00 would fairly and reasonably compensate Hooker for his damages.[2]  The jury also awarded Hooker=s attorney=s fees in the
amount of $34,599.43 for preparation and trial, 
as well as $10,000.00 contingent upon an appeal to the Court of Appeals
and $10,000.00 contingent upon an appeal to the Supreme Court of Texas.[3]








The judgment, which incorporated by
reference the charge of the court and the jury=s verdict, awarded
Nguyen actual damages in the amount of $111,055.75 for fraud.[4]  The judgment also awarded Nguyen $100,000.00
for exemplary damages on his fraud claim; found that Hooker failed to make
prompt payment; found that the failure to make prompt payment was unexcused;
and awarded Nguyen $42,672.56 in attorney=s fees and
$10,000.00 each for an appeal to the court of appeals and to the supreme
court.  The judgment purported to
incorporate by reference the jury=s findings and
provided that AAll relief not granted herein is hereby
denied.@

Subsequent to trial, Hooker filed a motion
with the court entitled ARobert Hooker=s Partial Motion
for Judgment on the Verdict, Partial Motion to Disregard Jury=s Findings,
Partial Motion for Judgment Notwithstanding the Verdict, Motion to Modify,
Correct or Reform the Judgment, and, Alternative to the Granting of All of the
Foregoing, Motion for New Trial.@  The trial court denied the motion in its
entirety.  

Hooker brings this appeal, raising
thirty-four issues, which break down as follows:

$                  
In issues one
through thirteen and twenty‑three through thirty‑two, Hooker claims
that the evidence is legally and factually insufficient to support the jury=s findings regarding fraud, negligent
misrepresentation, and prompt payment (and damages therefor); 

$                  
in issue
fourteen, Hooker argues that his excuse for failure to make prompt payment was
established as a matter of law; 

$                  
in issues fifteen
through twenty and thirty‑three, Hooker argues that the jury=s findings on Hooker=s breach
of the agreement (and damages therefor), attorney=s fees,
and exemplary damages should have been disregarded by the trial court since
Nguyen was in material breach first;

$                  
in issue twenty‑one,
Hooker claims that the trial court erred in failing to enter a judgment that
Nguyen take nothing on his claims;








$                  
in issue twenty‑two,
Hooker urges that because Nguyen=s only
remedy is based on Hooker=s alleged breach of their contract, the jury=s answers regarding fraud and negligent
misrepresentation should have been disregarded; 

$                  
and, in issue
thirty‑four, Hooker alleges that the trial court erred in submitting
Nguyen=s fraud questions due to the fact that the questions
were not supported by Nguyen=s pleadings.

Nguyen neither filed a cross-appeal, nor asserted an
alternative theory of recovery in his reply brief.  We take Hooker=s issues out of
order to facilitate a more orderly discussion. 


Fraud and Negligent Misrepresentation: Tort vs. Breach of Contract[5]

In his twenty-second issue, Hooker argues
that the jury=s responses to questions three through
seven, finding that Hooker committed fraud against and made negligent
misrepresentations to Nguyen, and the jury=s award of
exemplary damages to Nguyen based on Hooker=s fraud should be
disregarded.  Hooker argues that the questions
improperly raise tort causes of action when the only remedy available to Nguyen
was on his breach of contract claim.  We
agree, examining Hooker=s issue under the standards as set forth
by the supreme court in both Southwestern Bell Telephone v. DeLanney and
Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.

The DeLanney Standard








In determining whether an action sounds in
contract or tort (or both), we look first to the source of the duty to
act.  Southwestern Bell Tel. v.
DeLanney, 809 S.W.2d 493, 494 (Tex. 1991); see also Willis v. Donnelly,
118 S.W.3d 10, 30-31 (Tex. App.CHouston [14th
Dist.] 2003, pet. filed).  In performing
this task, we must look to the substance of the cause of action and not
necessarily to the manner in which the action was pleaded.  Willis, 118 S.W.3d at 30B31 (citing Jim
Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 617 (Tex. 1986)).  A claim ordinarily sounds in contract if the
conduct in question gives rise to liability only as a breach of an agreement
between the parties.  DeLanney,
809 S.W.2d at 494.  We next consider the
nature of the remedy or damages sought by the claimant.  Id. 
As the supreme court pointed out in Reed, the nature of the
injury most often determines the duty (or duties) breached; when the injury is
only the economic loss of the subject of a contract itself, the action sounds
in contract alone.  Reed, 711
S.W.2d at 618.

Despite the fact that the jury in this
case awarded a seemingly arbitrary sum of $101,666.67 to Nguyen for damages
resulting to him for fraud and $101,666.67 in monetary loss and $44,159.20 in
loss of value for damages from Hooker=s negligent
misrepresentation(s), Nguyen presented very little evidence at trial that his
damages were anything except the $44,159.20 remaining on the contract and his
attorney=s fees.[6]  In fact, the entirety of Nguyen=s direct testimony
regarding his damages was as follows:

MR. TANG:[7]  How much money are you asking the jury to
award you?

NGUYEN:              Besides the money that [Hooker]
has owed me, it costs me a lot of money on this job.  I have a big loss.

MR. TANG:            How much does [Hooker] owe you?

NGUYEN:              $44,159.

MR. TANG:            Are you also asking for your
attorney=s fees in this case?

NGUYEN:              Correct.

Nguyen=s counsel asked
Nguyen further questions regarding his attorney=s fees and then
rested.  On cross examination, Hooker=s counsel asked
Nguyen about his damages:

MR. ARNOLD:[8]       All you want from my client is $44,000;
right?

NGUYEN:              No, I want more than that.

MR. ARNOLD:        Plus you want your attorney=s fees?








NGUYEN:              Yes,
plus the legal fees, plus the money that I spent on the job, too.   

Aside from this testimonial evidence, Nguyen presented
no documentary evidence of monetary damages he suffered as a result of Hooker=s alleged
fraud.  Nguyen did claim that Hooker
forced him to install several items which constituted Afree upgrades@ of items or
equipment listed in the original plans, including light bulbs, an exit ramp, a
24-hour sign timer, and crown molding. 
However, Nguyen produced neither detailed statements of his costs on the
project nor an accounting of losses resulting from the extra work performed or
extra materials provided for the job.  

Nguyen also claims that Hooker=s statements to
Nguyen concerning rent were indicative of fraud.  In the October letter to Nguyen, Hooker
stated that AEffective immediately, I want someone
working on our job full time.@  Hooker went on to write that A[w]e have 120
days, from August 4th, to complete construction before we begin paying rent of
$14,056.17 a month.@ 
Hooker made the same statement in his November letter.  In Hooker=s initial
accounting of offsets for Nguyen=s payment, Hooker
includes in his list $5,000.00 in liquidated damages for late completion of the
work.[9]  We find the amounts listed on the spreadsheet
represent offsets against Nguyen for his alleged substandard performance rather
than Nguyen=s out-of-pocket expenses or losses he
incurred as a result of Hooker=s breach.








Another of Nguyen=s contentions is that Hooker induced
him to secure lien waivers from the job=s subcontractors as a way of
preventing Nguyen from being able to file his own lien should Hooker not pay
him.  Construction contracts in Texas
often require the securing of all lien waivers from subcontractors before a
final amount can or will be paid to the contractor.  Tex.
Prop. Code Ann. ' 53.152 (Vernon 1995); see also TA Operating Corp.
v. Solar Applications Eng=g, Inc., No. 04-04-00180-CV, 2005 WL 712010
at *3 (Tex. App.CSan Antonio March 30, 2005);
http://www.contractors.com/homeowners/resources/lien_waiver_info.html. Although
Nguyen secured these lien waivers, he failed to produce evidence showing his
damages independent of those arising from Hooker=s alleged breach of the contract.

In conclusion, we find that Nguyen=s statement AI have a big loss@ and his request
for Athe money that I
spent on the job@ are inadequate to show he suffered
damages arising from Hooker=s alleged fraud or
negligent misrepresentations.  Hooker=s duty to pay
Nguyen the $44,159.20 arose solely from the contract.  Likewise, Nguyen=s damages, the
$44,159.20 and his attorney=s fees, were only
for the economic loss caused by Hooker=s failure to
perform; although Nguyen pleaded fraud and negligent misrepresentation in
addition to breach of contract, he clearly sought to recover the benefit of his
bargain with Hooker.  See DeLanney,
809 S.W.2d at 495.

The Formosa Plastics Standard








One area in which the supreme court has
held DeLanney=s two-pronged analysis to be inapplicable,
however, is in the fraudulent inducement of a contract.  In Formosa Plastics Corp. USA v. Presidio
Eng=rs and Contractors, Inc., the supreme
court held that Atort damages are recoverable for a
fraudulent inducement claim irrespective of whether the fraudulent
representations are later subsumed in a contract or whether the plaintiff only
suffers an economic loss related to the subject matter of the contract.@  960 S.W.2d 41, 47 (Tex. 1998).  For Formosa Plastics to preclude
application of the DeLanney test, however, a claim must be one of
fraudulent inducement and not of mere common-law fraud; that is, a successful
claim of fraudulent inducement requires a party to present legally sufficient
evidence that another party made certain representations with the intent to
deceive and with no intention of performing as represented.  Formosa Plastics, 960 S.W.2d at 47 (A[A]n independent
legal duty, separate from the existence of the contract itself, precludes the
use of fraud to induce a binding agreement.@).  Furthermore, as the court in Formosa
Plastics noted, the evidence presented must be relevant to Hooker=s intent at the
time the representations were made.  See
id. 

In this case, Nguyen argues that Formosa
Plastics should apply and that his contract and fraud causes of action are
therefore distinct.  In his original
petition, which was his live pleading at trial, Nguyen=s fraud cause of
action reads as follows:

5.       After
[Nguyen] completed the work, [Hooker] hired attorney Terrence P. Baggot of
Baggot & Swaim, P.C. to evade paying [Nguyen] the final payment.  [Hooker] and [his] attorney made several
misrepresentations to [Nguyen] regarding the substance and obligations of the
parties= agreement in a
concerted effort to avoid paying [Nguyen] the remainder of the contract
price.  [Nguyen] relied on these
misrepresentations to his detriment.   

Nguyen produced no evidence at trial that Hooker hired
Baggot in order to avoid paying Nguyen. 
Furthermore, Hooker=s hiring of Baggot
in February of 2001 came after the execution of the January
agreement.  Thus, the fraudulent intent
Nguyen asserts in his pleading (i.e., Hooker=s hiring Baggot to
avoid paying Nguyen) and the allegedly fraudulent misrepresentations made by
Hooker and Baggot chronologically post-date the agreement into which Nguyen was
allegedly fraudulently induced.

Even though Nguyen did show at trial that
Hooker made certain misrepresentations to him in the October and November
letters regarding the rent payment amounts, the record does not support
findings that these misrepresentations either 1) were part of a concerted
effort to avoid performing the contract or 2) as discussed above, damaged
Nguyen beyond what he was owed under the contract.  








Nguyen also claims that Hooker made
misrepresentations to him regarding Nguyen=s responsibility
in installing the sprinkler system.  We
find that this argument has no merit. 
Hooker testified at trial that the reason Asprinkler system@ appeared on the
November 2000 list of items to finish was because Nguyen was responsible for
installing the walls and the drop ceiling so that the sprinkler system could be
installed by a third party.  Nguyen was
never forced to install the sprinkler system, and he did not show that he
incurred losses resulting from Hooker=s alleged
misrepresentation.

In his brief, Nguyen depends heavily on
Treusdell=s testimony that Hooker Ais the most
ruthless person I=ve ever met in my whole life@ to support his
position that Hooker=s conduct constituted acts of fraud.  This statement is no more than an opinion
without factual foundation in the record. 
It is of no value in establishing acts of fraud allegedly perpetrated by
Hooker.  Moreover, Treusdell replied Ano@ when asked
whether he believed that Hooker had Aripped [Nguyen]
off.@  Hooker testified at trial that his former
dealings with Nguyen had been positive; furthermore, by the time Nguyen filed
suit, Hooker had paid Nguyen all but $44,159.20 of the $305,000.00 contract
price.

Despite Nguyen=s extensive and
verbatim quoting of portions of Formosa Plastics in his brief, he
is unable to show us why the case should apply. 
We therefore find that Nguyen did not present sufficient evidence that
Hooker induced Nguyen into entering into the contract by making representations
with the intent to deceive and with no intention of performing as
represented.  See Formosa Plastics,
960 S.W.2d at 48.  As a result of Nguyen=s failure to show
that he was fraudulently induced by Hooker into either the fall 2000 or the
January 2001 AConstruction Issues@ contracts, we
find that the Formosa Plastics standard does not apply.  Id. 
As our sister court did in Classical Vacations, Inc. v. Air France,
we decline to extend Formosa Plastics to include fraud that allegedly
occurs after the formation of a contract and that results only in loss to the
subject of the contract.   See
Classical Vacations, Inc. v. Air France, No. 01-01-01137-CV, 2003 WL
1848247 at *3 (Tex. App.CHouston [1st Dist.] 2003, no pet.) (mem.
op.). 

Exemplary Damages








As the supreme court noted in Reed,
Ato support an
award of exemplary damages, . . . the plaintiff must prove a
distinct tortious injury with actual damages.@  711 S.W.2d at 618.  Because Nguyen has failed to prove a distinct
tortious injury with actual damages, we find that no support exists for the
jury=s award of
exemplary damages.  See id.  The trial court therefore erred in its
refusal to disregard the jury=s answers
regarding fraud, negligent misrepresentation, and exemplary damages.  We sustain Hooker=s twenty‑second
issue as to the jury=s answers regarding fraud and the
exemplary damages award. 

Breach of Contract

In his fifteenth, sixteenth, and
seventeenth issues, Hooker argues that the jury=s findings that
Hooker failed to comply with the agreement, that $44,159.20 would compensate
Nguyen for Hooker=s failure to comply, and that Hooker=s failure to
comply was not excused should have been disregarded as immaterial because AHooker proved
conclusively that Nguyen failed to comply with the contract before Hooker
refused to make the final payment that would have been due under the contract,@ therefore
excusing Hooker=s non-performance.  We agree.

It is a well-settled principle in Texas
law that when a party to a bilateral contract commits a material breach of that
contract, the other party is discharged or excused from further
performance.  See Mustang Pipeline
Co., Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 196 (Tex. 2004)
(citing Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex.
1994)); see also D.E.W., Inc. v. DEPCO Forms, Inc., 827 S.W.2d 379, 382
(Tex. App.CSan Antonio 1992, no writ).  A party to a contract who is himself in
default cannot maintain a suit for its breach. 
Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990).  However, the doctrine of substantial
performance allows a contract action by a builder who has breached, but
nevertheless substantially completed, the contract on a building project.  Id. 
In order to recover damages for substantial performance, a builder bears
the burden of proving that he actually substantially performed.  Id. 


First, because we are dealing with dual
and conflicting findings that both parties breached the agreement, we turn to
the question of whether Nguyen=s breach was a
material one.  Pursuant to Mustang Pipeline,
we consider the circumstances listed in the Restatement and cited by the
supreme court that are significant in determining whether a failure to perform
is material: 








(a) the extent to which the injured party will be
deprived of the benefit which he reasonably expected; 

(b) the extent to which the injured party can be
adequately compensated for the part of that benefit of which he will be
deprived; 

(c) the extent to which the party failing to perform
or to offer to perform will suffer forfeiture; 

(d) the likelihood that the party failing to perform
or to offer to perform will cure his failure, taking account of the
circumstances including any reasonable assurances; 

(e) the extent to which the behavior
of the party failing to perform or to offer to perform comports with standards
of good faith and fair dealing.   

Restatement (Second) of Contracts ' 241 (1981).  In addition to these factors, the Restatement
also sets forth significant 
circumstances that aid in a determination of whether a party=s duties are discharged under a
contract due to the other party=s material breach:

(1) the extent to which it reasonably appears to the
injured party that delay may prevent or hinder him in making reasonable
substitute arrangements. 

(2) the extent to which the agreement provides for
performance without delay, but a material failure to perform or to offer to
perform on a stated day does not of itself discharge the other party=s remaining duties unless the circumstances, including
the language of the agreement, indicate that performance or an offer to perform
by that day is important. 

Restatement (Second) of Contracts ' 242 (1981).

The record establishes that Nguyen=s breach was
material.  Hooker was deprived of a benefit that he
reasonably expected, that is, an on-time project finished by a certain day that
produced a working and workable salon with no construction defects.  Within three weeks of the contract being
signed, Hooker notified Nguyen that his progress on the job was inadequate and
referred to an original agreed-upon date of completion.  This date of completion was again mentioned
in the November 2000 letter. 
Furthermore, in the January 2001 agreement, which was signed, unlike any
of the other contract documents, by all three parties (Hooker, Nguyen, and
Treusdell), each Aconstruction issue@ to be remedied by Nguyen listed a
specified date of completion (e.g., under the heading AWalls & Ceilings@: AA. Wall capped and finished.  Date: 1/28/01@) (italicized date was written in by
hand).  








Nguyen also neglected to cure his failure to perform and his
behavior did not comport with standards of good faith and fair dealing.  He promised in the January contract to
complete the Aentire project@ by February 4, 2001, and
acknowledged that his failure to do so would result in liquidated damages of
$5000.00.  Hooker and Treusdell were to
begin paying their full rent payment on March 1, 2001.  Having the project completed prior to that
date so that they could open the salon, and thereby begin turning a profit on
their investment, was highly important to Hooker and Treusdell.  In his March 12 demand letter to Hooker,
Nguyen stated that he had finished the project eighteen days before.  Counting back, this puts Nguyen=s completion of the project, by his
own admission, eighteen days late.[10]  

In his brief, Nguyen argues that the job was completed in
January of 2001, using as evidence a May 18, 2001 letter to Hooker from
attorney Rob Atherton.  Hooker had asked
Atherton for an opinion letter on whether Nguyen and CPN (Nguyen=s construction company) could file a
valid mechanic=s lien on the property; in the
letter, Atherton states that Athe contractor=s own letter of March 12, 2001,
acknowledges that the job was completed to the point of occupancy and operation
in January of 2000.@  Although the salon
might have been able to have been occupied, Nguyen himself admitted that he did
not finish the job until February of 2001. 
Indeed, Atherton=s letter goes on to state:

You mentioned that some of the
contractor=s sub continued to work on the job
(apparently on what CPN refers to as the >punch out list=) into February, but you are
uncertain that they have been paid in full for the work that they did after the
general contractor claimed the job was complete and abandoned further work.








The fact that Atherton=s letter states that subcontractors worked on the job through
February indicates that Nguyen had not fully completed his obligations under
the contract as of January 2001. 
Furthermore, regardless of whether the job was completed to the point
that the salon could be occupied, Hooker, Treusdell, Virginia Hahn,[11]
and Robert Boltwood[12]
all testified at trial as to numerous and ongoing problems with the
construction work performed by Nguyen. 
This evidence points to the fact that, despite being given multiple
opportunities to cure the construction defects, Nguyen never did.

Nguyen=s delay also prevented Hooker from making reasonable
substitute arrangements.  Although Hooker
fired Nguyen on February 11, 2001, he testified that he re-thought this
decision based on the difficulty of having to find new subcontractors to come in
and finish the job.  

In addition to finding that Nguyen failed to substantially
perform the contract, the jury also found that Nguyen=s failure to comply with his warranty
was a producing cause of damages to Hooker. 
The jury was instructed that Afailure to comply with a warranty@ meant:

Furnishing or selecting goods that were not suitable
for a particular purpose if Nguyen had reason to know the purpose and also had
reason to know that Hooker was relying on Nguyen=s skill
or judgment to furnish or select suitable goods.

Failing to perform services in a good
and workmanlike manner.  A good and
workmanlike manner is that quality of work performed by one who has the
knowledge, training, or experience necessary for the successful practice of a
trade or occupation and performed in a manner generally considered proficient
by those capable of judging such work.    

Hooker also presented evidence at trial that he had to bring in outside
contractors to repair Nguyen=s work and to remedy ongoing problems that resulted from
Nguyen=s deficient performance. 








Moreover, as mentioned, the jury answered Ano@ to the question
of whether Nguyen substantially performed his obligations under the contract.[13]  We find that the jury, by finding that Nguyen
failed to substantially perform, implicitly found that his breach was
material.  Other courts in Texas have
held that if there is a material breach of a contract, that contract has not
been substantially performed.  See
Cont=l Dredging v. De-Kaizered, 120 S.W.3d 380,
394 (Tex. App.CTexarkana 2003, pet. denied); Patel v.
Ambassador Drycleaning & Laundry Co., 86 S.W.3d 304, 309 (Tex. App.CEastland 2002, no
pet.); see also Measday v. Kwik-Kopy Corp., 713 F.2d 118, 124
(5th Cir. 1983).  We see no reason why
the converse should not apply; that is, that if a party fails to substantially
perform, his breach of the contract is material. 

Based on this evidence, we hold that Nguyen committed a
material breach as a matter of law; as a result, Hooker was thereafter
discharged from his duties under the contract. 
See Mustang Pipeline, 134 S.W.3d at 200.[14] 
Therefore, the trial court should have disregarded the jury=s answers to the questions regarding
Hooker=s breach, the inexcusability of his
breach, and the damages resulting to Nguyen from Hooker=s breach.  We sustain Hooker=s fifteenth, sixteenth, and
seventeenth issues.

Conclusion








In his twenty‑first issue, Hooker argues that the trial
court erred in refusing to enter a take‑nothing judgment on Nguyen=s claims against Hooker.  We agree. 
As a result of our finding that Hooker=s breach was excused by Nguyen=s own prior breach, which was
material, the jury findings that Hooker failed to make prompt payment, that his
failure to make prompt payment was not excused, and that $72,672.56 were
reasonable attorney=s fees, are rendered immaterial.  The trial court therefore erred in refusing
to disregard them.  We further note that
the court=s award of attorney=s fees to Nguyen based on Hooker=s failure to make prompt payment
under the Property Code was improper as a matter of law.  Tex.
Prop. Code Ann. '' 28.001B003 (Vernon 2000).  In
order to recover attorney=s fees, a party must 1) prevail on his cause of action for
which such fees are recoverable and 2) recover damages.  Bohatch v. Butler & Binion, 905 S.W.2d
597, 608 (Tex. App.CHouston [14th Dist.] 1995), aff=d, 977 S.W.2d 543 (Tex. 1998).  Although Nguyen prevailed on his prompt
payment cause of action, the jury did not find and the judgment did not award
damages for Hooker=s failure to promptly pay Nguyen.  Nguyen therefore cannot recover attorney=s fees from Hooker on that basis.

Because of our disposition of issues fifteen, sixteen,
seventeen, twenty‑one, and twenty‑two, we need not address issues
one through fourteen, eighteen through twenty, and twenty‑three through
thirty‑four.  We reverse the
judgment of the trial court and render judgment that Nguyen take nothing on his
claims and that Hooker be awarded damages in the amount of $58,949.00 and
attorney=s fees in the amount of $44,599.43 as well
as $10,000.00 contingent upon an appeal to the Supreme Court of Texas.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion on Rehearing filed October 20, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.











[1]  Hooker and
Treusdell ended their business relationship in March of 2002.  At that time, Hooker became the sole
shareholder of the corporation that owned the salon.  





[2]  The $58,949.00
awarded broke down as follows: $3,949.00 for costs of remedying or repairing
defects due to Nguyen=s errors or omissions in performing; $5,000.00 for
liquidated damages for Nguyen=s late performance; $50,000.00 in diminution of value
of the salon; and $0.00 for reasonable and necessary costs, including
additional rents, resulting from Nguyen=s errors
and omissions.





[3]  Nguyen does
not challenge this point on cross-appeal.





[4]  This figure
represents the sum of the fraud damages of $101,666.67 awarded by the jury and
interest.  The fraud award also included
post-judgment interest and $3,974.00 in court costs.





[5]  Although the
judgment did not award Nguyen damages based on negligent misrepresentation (and
despite the fact that Nguyen did not assert negligent misrepresentation as an
alternative basis of recovery in the event of reversal), we address it in order
to address Hooker=s issue in its entirety.





[6]  It is
interesting to note that $101,666.67, the seemingly arbitrary amount awarded to
Nguyen once for his damages from fraud and again for his monetary loss from the
alleged negligent representation made by Hooker to Nguyen, is one-third of
$305,000.00.  The original contract price
was $305,159.20.





[7]  David Tang
represented Nguyen at trial.





[8]  Robert Arnold
represented Hooker at trial.





[9]  There is no
date on the original document, but the total amount of offsets comes to
$43,939.00, a difference of $220.20 from the amount Nguyen claimed that Hooker
owed him when Nguyen filed suit.  Two
later versions of the same document, introduced at trial and (we assume)
prepared after the commencement of litigation, do include a charge against
Nguyen of $14,056.00 for February 2001 rent. 
However, because the later spreadsheets that include the full rent
charge were prepared after the commencement of litigation, Nguyen does not show
that he was ever charged more than liquidated damages for his late work.





[10]  Eighteen days
before March 12 was February 22, eighteen days after the agreed date of
February 4.





[11]  Virginia Hahn
served as the property manager of the salon from March  of 2001 to March of 2003.





[12]  Boltwood
worked at the property as the maintenance man.





[13]  Nguyen neither
asked the trial court to disregard this finding nor filed a cross‑appeal
challenging the finding.  





[14]  Applying the Dobbins
rule of substantial performance, we also feel it necessary to point out
that, because of the jury=s negative finding on substantial performance, Nguyen
is unable to meet his burden of establishing substantial performance.  See Dobbins, 785 S.W.2d at 378.  This failure therefore bars his recovery
under the contract.  Id.  We also note that, because the contract
specified neither a completion date nor a date on which or a manner by which
Nguyen would be paid, it can be assumed that Hooker=s duty to pay Nguyen would not arise until Nguyen
completed his obligations under the contract. 
See D.E.W., Inc., 827 S.W.2d at 382.